708 P.2d 97

**The STATE of Arizona, Appellant,**

**v.**

**Gerald Dean VINCENT, Appellee.**

**No. 2 CA–CR 3595.**

Court of Appeals of Arizona, Division 2, Department B.

May 2, 1985.

Reconsideration Denied June 24, 1985.

Review Denied Oct. 22, 1985.

Stephen D. Neely, Pima County Atty. by Gary W. Heimbach, Tucson, for appellant.

Natman Schaye, Tucson, for appellee.

## OPINION

LIVERMORE, Judge.

On March 1, 1982, defendant and Ronald Westphal, a juvenile, were arrested for burglary. Both were released. Westphal failed to appear in juvenile court and a bench warrant for his arrest was issued on March 26, 1982. He has not been seen since. Defendant was indicted on December 30, 1982. Three counsel appointed to represent him had to withdraw. Defendant's present counsel was appointed in April 1983. In November 1983, defense counsel sought information on the location of Westphal. Thereafter motions were

made, one ultimately successful, for the appointment of a private investigator to locate Westphal. That effort was unavailing. Defendant then moved to dismiss for preindictment delay. While finding neither intentional delay nor a duty to have kept Westphal in jail, the trial judge granted the motion on the ground that the delay might have caused the loss of him as a potential defense witness. From this ruling, the state appeals. We have jurisdiction under A.R.S. § 13–4032(1).

Defendant admits breaking the window of the business he is charged with burglarizing. He denies having entered the business. A police witness will testify to having seen defendant leaving the business through the window. Westphal, when arrested, first admitted having entered the business with defendant but later recanted and claimed that neither of them had entered the business. It is the recantation that defendant claims was the material evidence lost by the preindictment delay.

 Citing State v. Superior Court, 127 Ariz. 175, 619 P.2d 3 (1980), the state first argues that defendant's motion was untimely under Rule 16.1(c), Rules of Criminal Procedure, 17 A.R.S., and, therefore, the trial court erred in even considering it. That case appeared to hold that all pretrial motions must be filed within twenty days of the first trial date unless the ground of the motion was not then known. While that can be supported by the mandatory language of the rules, we believe that such a construction of the case is too broad. First, that holding was an alternative one not necessary to the result. Second, the court recognized that the time for filing motions could be extended by court order. See also State v. Perez, 141 Ariz. 459, 462, 687 P.2d 1214, 1217 (1984). Implicitly, if a court in its discretion may extend the time for filing motions, it has the discretion to hear late motions. Such a hearing is, in effect, an extension of the time for filing. Third, in other cases, the court has recognized that a trial court has discretion to hear motions filed subsequent to the deadline if counsel acts with reasonable prompt-

titude after learning the basis of the motion, State ex rel. Collins v. Superior Court, 132 Ariz. 180, 644 P.2d 1266 (1982), or if precluding the motion would deny the defendant a fair trial. State v. Pickett, 121 Ariz. 142, 589 P.2d 16 (1978). Finally, the rule respecting ineffective assistance of counsel announced in State v. Watson, 134 Ariz. 1, 653 P.2d 351 (1982), requires that a court have discretion to hear late defense motions. The court there stated:

> "In representation of a person accused of crime, every defense attorney would be expected to file pre-trial motions when the facts raise issues concerning the voluntariness of statements, the legality of searches, or the suggestiveness of identification. Failure by an attorney to pursue such matters would be considered representation which falls below the minimum standards of professional competence required of defense counsel." 134 Ariz. at 4–5, 653 P.2d at 354–5.

It would ill serve sound judicial administration to preclude such motions so as to proceed to a trial in which a conviction would be defeasible for ineffective assistance of counsel.

 The preclusion sanction in Rule 16.1(c) exists in order to insure orderly pretrial procedure in the interests of expeditious judicial administration. It is designed to require that all appropriate motions be heard together and thus to prevent the perhaps strategic bringing of piecemeal motions designed primarily for purposes of delay. See II American Bar Association Standards for Criminal Justice, Discovery and Procedure Before Trial (1978). Given the sometimes devastating impact of preclusion, its use should be limited to those instances where it will fairly serve the interest in judicial administration by punishing those who for tactical reasons seek to subvert that interest. That, of course, is a judicial question. Preclusion is not the right of a prosecutor seeking to avoid the resolution of a question on the merits. Rather, it is a judicial remedy designed to protect judicial interests. Its invocation,

therefore, rests in the discretion of the trial court subject to review only for abuse.

The reasons for allowing substantial discretion in the trial court are evidenced by the record in this case. The initial trial date was April 15, 1983. Because three counsel appointed to represent the defendant had to withdraw, counsel who brought the motion was not appointed until the initial trial date had passed. Were we to apply the ruling of *State v. Superior Court, supra,* with the mindlessness suggested by the state, no motions on behalf of the defendant could be brought. That, of course, would raise substantial constitutional questions. On May 6, 1983, defense counsel asked for the assistance of a private investigator in this and a companion case in part because of the need to locate and interview Westphal. That motion, which was opposed by the state, was denied. Thereafter, plea negotiations and complications in a companion case led to numerous continuances of the trial date and in some instances to an extension of the time for filing motions. A firm trial date was set for February 28, 1984. In early February, defense counsel moved for the assistance of the state in locating Westphal and for a deposition of him. On February 22, 1984, defense counsel, because of the absence of Westphal, moved in the alternative for a continuance, for the appointment of an investigator to locate Westphal, for other orders compelling Westphal's attendance and, if all such efforts should fail, for a dismissal. Those motions were ultimately heard after further plea negotiations failed.

This record demonstrates that defense counsel had indicated his desire to locate Westphal almost immediately after his appointment. Nothing in the course of his representation indicated any retreat from this position. The prosecution was aware of that desire but did nothing to assist the defendant and, in fact, resisted the provision of investigatorial assistance. When the motion for dismissal finally was heard, it involved no prejudice to the prosecution because its factual basis was the same basis on which other motions had been premised. Neither did it involve a tactical delay by the defense in derogation of sound judicial administration. The decision of the trial court to hear the motion was not an abuse of discretion.

Even were it necessary to show that the motion was brought as soon as possible in order to avoid the effect of Rule 16.1(c), that test, as well, would be met on the facts of this case. The thrust of defendant's motion was that preindictment delay caused the loss of a material witness on the issue of defendant's guilt. Such loss could be demonstrated only after reasonable investigative efforts had been made to locate the witness. The prosecution having continually resisted defense efforts to locate the witness is hardly in a position to claim that a motion to dismiss, after a court-approved investigation had failed, was untimely. For the same reason, it appears that defense counsel acted with reasonable promptitude as soon as the ground for the motion appeared.

We now turn to the merits of the motion to dismiss for preindictment delay. The state urges that reversal is required under the rule of *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), because the defense has established neither actual prejudice nor that the delay was an intentional device to gain a tactical advantage over the accused. The defense, on the other hand, argues that this case is not to be judged by the *Marion* standard because the defendant's arrest on March 1, 1982, served to institute charges against him so as to begin his right to a speedy trial. See *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). While these cases appear to support the defense position, we are not certain that they are applicable on the facts of this unusual case where the claim of prejudice relates only to the period between arrest and indictment. There has been no defense desire for trial since that time and all further delays have been at the behest of

defendant or with his acquiescence. The language in *MacDonald* and *Dillingham* has been held to apply only to "arrests that were the beginning of continuing restraints on defendant's liberty imposed in connection with the formal charge on which defendant was eventually tried." *United States v. Stead,* 745 F.2d 1170, 1172 (8th Cir.1984). Defendant's personal recognizance release in this case may well not meet that test. For all practical purposes, from March 1, 1982, to December 30, 1982, defendant was not under charge. Without charge, under *MacDonald,* speedy trial rights are not implicated. Because of the finding by the trial court that the preindictment delay was not intentional, defendant is entitled to no relief under *Marion.*

Because of our uncertainty as to whether speedy trial rights are in issue, we proceed, alternatively, to the analysis mandated by *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Supreme Court there required a balancing of the length of the delay, the reason for it, the assertion by the defendant of his speedy trial right, and any prejudice to the defendant. The length of the relevant delay here is ten months; while that period is not long, no reason other than negligence in seeking an indictment appears for it. That defendant did not assert his right during that delay is hardly material when he was free on bond and unrepresented by counsel before the bringing of formal charges. Finally, defendant has made at least a colorable claim of prejudice through the loss of Westphal as a witness.

We nonetheless hold that defendant has not been denied his speedy trial right in this case. First, it is clear as in *Barker, supra,* that defendant did not want to go to trial. Unlike *Dillingham, supra,* where post-arrest, preindictment delay brought a speedy trial claim the moment the indictment was returned, here the claim was advanced in these terms over sixteen months after the return of the indictment. A later conversion to the speedy trial gospel after a protracted life of sinful inducement and enjoyment of continuances is a strong indication that there has been no deprivation of a constitutional right.

To us most significant in the constitutional balance is the question of prejudice. Here we must assess not only what is lost but how the impermissible delay caused that loss. The loss of a co-participant as a witness is difficult to assess. One cannot be confident that the witness will testify rather than invoking his privilege against self-incrimination. Even if we were to assume that Westphal would testify, we cannot be certain which of his two contradictory prior statements would be the testimony he would give. Even if we assume he would testify to defendant's innocence, we can be certain that he would be impeached by his prior inconsistent statement of defendant's guilt. Under Rule 801(d)(1)(E), Rules of Evidence, 17A A.R.S., that prior statement would be used as substantive evidence of guilt. In this posture, it is simply speculative to hold that the absence of Westphal prejudiced defendant. See *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). But even if there were more than this, it is clear that any delay was causatively unrelated to the loss of the witness. Had the indictment been returned immediately, Westphal, who became a fugitive within a month of the arrest, would still have been unavailable. In this posture, there simply is no prejudice from the delay.

The order of dismissal is reversed.

HATHAWAY, P.J., and LACAGNINA, J., concur.