IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,      )
                           )      2 CA-CR 2006-0226
              Appellee,    )      DEPARTMENT A
                           )
         v.                )      O P I N I O N
                           )
HIGINIO AGUILAR,           )
                           )
              Appellant.   )
                           )

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CR200501268

Honorable David M. Roer, Judge

VACATED AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Joseph L. Parkhurst                    Tucson
                                                   Attorneys for Appellee

Harriette P. Levitt                                            Tucson
                                               Attorney for Appellant

H O W A R D, Presiding Judge.

¶1        Appellant Higinio Aguilar challenges his convictions of aggravated assault with

a deadly weapon and various other criminal offenses, contending his second trial was barred

by the Fifth Amendment's protection against double jeopardy.[1]  We agree and therefore vacate the convictions and sentences entered at the conclusion of Aguilar's second trial and instruct the trial court to dismiss the charges against Aguilar with prejudice.

**Facts and Procedural Background**

¶2        The relevant facts are undisputed.  The state charged Aguilar with aggravated assault with a deadly weapon and other offenses arising out of his attempt to elude arrest.  During the first day of testimony in the first trial, one of the state's witnesses, a state-employed Forensic Services Coordinator, informed the prosecutor that she had obtained a ballistics report, prepared by the Department of Public Safety crime lab, evaluating whether a bullet casing found by investigating officers had come from a weapon also found by the officers in the course of their investigation.  The report was dated April 4, about one week before the trial.  Although the prosecutor had requested the report, he did not know it had been prepared and, consequently, had never disclosed it or the name of the criminalist who had prepared it to Aguilar.

¶3        The state indicated it intended to have the criminalist testify regarding the report.  It suggested that Aguilar be given twenty-four hours to review the report and interview the criminalist.  In the alternative, the state suggested a mistrial in order to give Aguilar time to hire his own expert to evaluate the ballistics evidence.  Aguilar requested

---

[1]Aguilar raises two additional claims on appeal, but we decline to address them because the question of double jeopardy is dispositive in this case.

that the court preclude the evidence pursuant to Rule 15.7, Ariz. R. Crim. P., arguing the state had been dilatory in failing to obtain and disclose the report until after trial had begun. The court considered continuing the trial and polled the jurors in writing to determine if they could reconvene the following week. Four jurors indicated they could not and Aguilar would not stipulate to a jury of fewer than twelve persons. The court declared a mistrial and the trial was reset for approximately two and a half weeks later. The second jury found Aguilar guilty of aggravated assault and other charges.

**Timeliness of Motion to Dismiss**

**¶4** Before his second trial, Aguilar moved to dismiss the case based on double jeopardy grounds. The court refused to hear the motion, finding the motion was not timely. We review the trial court's order concerning timeliness of a motion to dismiss for an abuse of discretion. *See State v. Vincent*, 147 Ariz. 6, 8-9, 708 P.2d 97, 99-100 (App. 1985).

**¶5** Rule 16.1(b), Ariz. R. Crim. P., provides that all motions must be "made no later than 20 days prior to trial." Rule 16.1(c) states: "Any motion, defense, objection, or request not timely raised under Rule 16.1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it."

**¶6** Aguilar could not have known the basis for the motion before the mistrial, which occurred fewer than twenty days before the second trial. Approximately two weeks after the mistrial, Aguilar moved to vacate the new trial date, indicating that he would be

3

filing a motion to dismiss based on double jeopardy grounds. Four days later, a few hours before the second trial was to begin, Aguilar moved to dismiss the case. Thus, under these circumstances, Aguilar filed both motions promptly after the court declared a mistrial and before the second trial commenced. Additionally, the motion sought to protect Aguilar's fundamental constitutional right to be free from double jeopardy. And, as we will explain, Aguilar's second trial was indeed barred by double jeopardy. Therefore, the state did not suffer any prejudice because the motion was not filed earlier. Accordingly, the trial court abused its discretion in denying Aguilar's motion to dismiss on the ground that it was untimely filed. *See Vincent*, 147 Ariz. at 8, 708 P.2d at 99 (finding it contrary to "sound judicial administration" to preclude an untimely motion "so as to proceed to a trial in which a conviction would be defeasible" on the merits of that motion).

**Double Jeopardy**

¶7        On appeal, Aguilar argues the trial court erred in declaring a mistrial and therefore the second trial violated his right against double jeopardy. In evaluating a double jeopardy claim, we review the trial court's decision to declare a mistrial for an abuse of discretion. *State v. Givens*, 161 Ariz. 278, 279, 778 P.2d 643, 644 (App. 1989).

¶8        The Double Jeopardy Clause of the Fifth Amendment, among other protections, protects a defendant from being tried multiple times for the same criminal offense and is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969). The Arizona Constitution

4

provides double jeopardy protection against multiple trials through an analogous clause. *See* Ariz. Const. art. II, § 10; *see also Jones v. Kiger*, 194 Ariz. 523, ¶ 6, 984 P.2d 1161, 1163 (App. 1999). Jeopardy attaches once the jury is empaneled. *See Crist v. Bretz*, 437 U.S. 28, 37-38, 98 S. Ct. 2156, 2162 (1978); *State v. Soloman*, 125 Ariz. 18, 21, 607 P.2d 1, 4 (1980).

¶9          The general principle behind double jeopardy is that,

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88, 78 S. Ct. 221, 223 (1957). The clause also "embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 829 (1978), *quoting Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837 (1949).

¶10          Nevertheless, the defendant's right to a single trial "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689, 69 S. Ct. at 837. Thus, when a mistrial is granted, retrial of the defendant is not always precluded. *Id*. at 688, 69 S. Ct. at 837. When a defendant moves for a mistrial, the state may generally reprosecute unless the mistrial was the product of prosecutorial misconduct or judicial overreaching. *See United States v. Dinitz*, 424 U.S. 600, 611, 96 S. Ct. 1075, 1081 (1976); *State v. Marquez*, 113 Ariz. 540, 542, 558 P.2d

692, 694 (1976). When the court declares a mistrial sua sponte, retrial will not be barred if there was a "manifest necessity for the mistrial or . . . the ends of public justice will otherwise be defeated." *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986).

## A. Prosecutorial Misconduct or Judicial Overreaching

¶11 Aguilar first argues that the mistrial was declared as a result of prosecutorial misconduct. Prosecutorial misconduct "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial." *Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984) (footnote omitted). During a discussion outside the presence of the jury, after the existence of the ballistics report had become known, the prosecutor explained to the court that the attorney originally assigned to this case had requested the ballistics report in October 2005, three months after the date Aguilar allegedly committed the charged offenses. The prosecutor who tried the case took over in March 2006, and submitted a second request for the ballistics report. This prosecutor then proceeded to trial without the report and apparently without inquiring about it. The report was disclosed after the trial had commenced and close to the end of the prosecutor's case. As Aguilar notes, the prosecutor then suggested a short continuance or a mistrial to cure the lack of disclosure problem. Aguilar also points out that the

6

prosecutor's argument concerning the report was legally incorrect in several respects. Although the failure to timely discover and disclose the report was entirely attributable to the state, and the prosecutor's argument was erroneous, the prosecutor's actions do not amount to prosecutorial misconduct.

¶12 We also reject Aguilar's suggestion that the mistrial was the result of judicial overreaching. We can find nothing in the record to indicate the court's action "was motivated by bad faith or undertaken to harass or prejudice [Aguilar]." *Dinitz*, 424 U.S. at 611, 96 S. Ct. at 1081-82.

## B. Manifest Necessity

¶13 Aguilar further argues that he could not be retried without violating his double jeopardy rights because the mistrial was not the result of manifest necessity. We will not disturb the trial court's ruling on manifest necessity absent an abuse of discretion. *See Givens*, 161 Ariz. at 279, 778 P.2d at 644. But, the United States Supreme Court has noted that, when evaluating the trial court's decision regarding manifest necessity, the degree of deference a reviewing court should accord the trial court depends on the circumstances that gave rise to the mistrial. *See Washington*, 434 U.S. at 506-07, 98 S. Ct. at 831. When a mistrial is declared because the jury is deadlocked, we should give great deference to the court's decision. *Id.* at 509-10, 98 S. Ct. at 832. The trial court is in the best position to determine whether the jury is at a true impasse and whether further deliberations are appropriate. *Id.* at 510 n.28, 98 S. Ct. at 832 n.28. On the other end of the spectrum, when

a mistrial is declared because critical evidence for the prosecution is unavailable, we should apply the "strictest scrutiny." *Id.* at 507-08, 98 S. Ct. at 831-32.

> Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this "abhorrent" practice.

*Id.* at 507-08, 98 S. Ct. at 831; *see also Gori v. United States*, 367 U.S. 364, 369, 81 S. Ct. 1523, 1526-27 (1961) (Fifth Amendment protects defendants when "a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused."). Accordingly, we must apply the strictest scrutiny here.

¶14 "Manifest necessity" can arise in many different situations and the courts have not attempted to adopt a single, all encompassing definition. *See McLaughlin*, 150 Ariz. at 277, 723 P.2d at 95 (listing various examples of manifest necessity). Although absolute necessity is not required, *Givens*, 161 Ariz. at 281, 778 P.2d at 646, the United States Supreme Court has said there are various "degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Washington*, 434 U.S. at 506, 98 S. Ct. at 831. And, in *Gusler v. Wilkinson*, 199 Ariz. 391, ¶ 18, 18 P.3d 702, 706 (2001), our own supreme court stated that the prosecutor's "burden 'is a heavy one.' Indeed, the very term 'manifest necessity' emphasizes 'the magnitude of the prosecutor's burden.'" *Id., quoting Washington*, 434 U.S. at 505, 98 S. Ct. at 830; *see also Evans v. Abbey*, 130 Ariz.

8

157, 159, 634 P.2d 969, 971 (App. 1981) ("A mistrial is not warranted when the court ha[s] the ability to prevent its necessity.").

¶15        The parties have not cited any Arizona case directly on point.  But, other jurisdictions have generally held that the state's inability to use a piece of evidence does not constitute manifest necessity for a mistrial.  *See Long v. Humphrey*, 184 F.3d 758, 759, 761 (8th Cir. 1999) (habeas relief granted because no manifest necessity where tape of defendant's interview with police discovered after trial began); *Fanning v. Superior Court*, 320 A.2d 343, 344-45 (Del. 1974) (no manifest necessity where prosecution failed to produce two requested toxicology reports until after trial had begun); *Parce v. Byrd*, 533 So. 2d 812, 813, 815 (Fla. Dist. Ct. App. 1988) (no manifest necessity where new evidence discovered after jury had been sworn); *State v. Carney*, 714 P.2d 532, 533, 535-36 (Mont. 1986) (no manifest necessity after court ruled blood alcohol tests inadmissible for failure to prove chain of custody); *State v. Fiske*, 526 A.2d 1273, 1274-75 (R.I. 1987) (no manifest necessity where prosecution sought to call undisclosed witness and defense requested time to review proposed testimony); *see also Washington*, 434 U.S. at 508 n.24, 98 S. Ct. at 832 n.24 ("If, for example, a prosecutor proceeds to trial aware that key witnesses are not available to give testimony and a mistrial is later granted for that reason, a second prosecution is barred."), *citing Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033 (1963).

¶16 Those cases in which the reviewing court has upheld a determination of manifest necessity have generally involved different or additional factors. *See Illinois v. Somerville*, 410 U.S. 458, 459-60, 471, 93 S. Ct. 1066, 1068, 1073-74 (1973) (manifest necessity to declare mistrial when court discovered no jurisdiction under state law due to fatal defect in indictment); *State in Interest of D.P.*, 556 A.2d 335, 337, 341 (N.J. Super. Ct. App. Div. 1989) (manifest necessity to declare mistrial where surprise testimony showed prosecutor would have to be called as witness); *State v. Carter*, 890 S.W.2d 449, 451, 453-54 (Tenn. Crim. App. 1994) (manifest necessity where, inter alia, *both* defense and prosecution disclosed new witnesses at or immediately prior to trial). *But see People v. Bagley*, 789 N.E.2d 860, 862, 865 (Ill. App. Ct. 2003) (mistrial to allow state to use videotape discovered during trial based on manifest necessity).

¶17 Additionally, our supreme court has found that when a trial court fails to consider viable alternatives to a mistrial, manifest necessity has not been shown. *McLaughlin*, 150 Ariz. at 277-78, 723 P.2d at 95-96. In *McLaughlin* the trial court considered whether the trial could proceed after the prosecutor had referred to potentially inadmissible evidence during her opening statement. *Id*. at 276, 723 P.2d at 94. The trial court found it was necessary to hold evidentiary hearings on the issue before proceeding and declared a mistrial. *Id.* Our supreme court concluded that the trial court had not adequately considered alternatives such as a short recess to resolve the evidentiary issue and thus there was no manifest necessity to declare a mistrial. *Id.* at 277-78, 723 P.2d at 95-96.

¶18    Here, the trial court considered continuing the trial as an alternative to declaring a mistrial but found this was not feasible because four jurors indicated they would not be available the following week. The court polled the jurors using a paper ballot on which the jurors indicated affirmatively or negatively whether they "could appear in court" the following week. The court did not question the jurors who had indicated they were unable to return, nor is there any record of the reasons for their claimed unavailability. We find the court in this case failed to sufficiently investigate whether the four jurors had legitimate reasons for their unavailability or whether it was simply more convenient to have their duties concluded immediately. To the extent the court based its declaration of a mistrial on its finding that the jury could not reconvene after a week-long recess, the record does not support a finding of manifest necessity under the strictest scrutiny. *See Washington*, 434 U.S. at 507-08, 98 S. Ct. at 831-32.

¶19    Moreover, the prosecutor in this case suggested the alternative of ordering a twenty-four-hour recess to allow Aguilar's counsel to review the ballistics report and interview the criminalist who had prepared it before deciding whether he wanted to hire his own expert to conduct an independent evaluation of the underlying evidence. Given the opportunity, Aguilar may have chosen not to seek another expert's opinion. Because a short recess could have cured the problem, the court's declaration of mistrial was, at least, premature. *See McLaughlin*, 150 Ariz. at 277-78, 723 P.2d at 95-96 (recess of twenty-four

11

to forty-eight hours to hold evidentiary hearings feasible alternative to mistrial and thus no manifest necessity).

¶20         Finally, the alternative urged by the defense—to preclude the ballistics report and proceed with the first trial—was entirely feasible. Rule 15.1(c), Ariz. R. Crim. P., requires the state to disclose all reports thirty days after arraignment and Rule 15.6(c), Ariz. R. Crim. P., requires all disclosures to be complete seven days before trial. Rule 15.6(d) then states what is to occur when the final disclosure deadline has been violated:

> A party seeking to use material and information not disclosed at least seven days prior to trial shall obtain leave of court by motion, supported by affidavit, to extend the time for disclosure and use the material or information. If the court finds that the material or information could not have been discovered or disclosed earlier even with due diligence and the material or information was disclosed immediately upon its discovery, the court shall grant a reasonable extension to complete the disclosure and grant leave to use the material or information. Absent such a finding, the court may either deny leave or grant a reasonable extension to complete the disclosure and leave to use the material or information, and if granted the court may impose any sanction other than preclusion or dismissal listed in Rule 15.7.

Rule 15.6(e) also provides for an extension of the disclosure deadline for scientific evidence if the expert avows that additional time is needed and the court does not find that the "request for extension resulted from dilatory conduct, neglect, or other improper reason on the part of the moving party." A motion under Rule 15.6(e) must be filed "prior to the final deadline for disclosure" of seven days before trial. Finally, Rule 15.7(a)(1), Ariz. R. Crim.

12

P., provides that one of the sanctions available to the court for a party's failure to disclose evidence is preclusion of that evidence.

¶21        In this case, Aguilar had been arrested ten months prior to trial. The report was dated seven days before trial, but it was first disclosed during trial. The record does not contain a proper request to permit untimely disclosure based on the workload of the expert or the DPS lab. Nor does it contain a proper motion or affidavit by the prosecutor explaining why the report could not have been discovered earlier by the exercise of due diligence. Thus, under the rules, the trial court would have been within its discretion to deny the state's request to introduce the untimely disclosed evidence. *See State v. Scott*, 24 Ariz. App. 203, 205, 537 P.2d 40, 42 (1975) (court within its discretion ordering preclusion for untimely disclosure of defense witnesses). *But see State v. Roque*, 213 Ariz. 193, ¶¶ 48, 50-51, 141 P.3d 368, 385-86 (2006) (no abuse of discretion in refusing to order preclusion for discovery violation involving scope of expert testimony).

¶22        The trial court expressed concern over the state being deprived of the report as evidence. But the trial court could not elevate this concern over the defendant's right to be protected from double jeopardy. *See Washington*, 434 U.S. at 503-04, 98 S. Ct. at 829-30. Moreover, the prosecutor, rather than requesting a pretrial continuance, chose to move forward, despite the fact that he had requested a ballistics report that was not forthcoming. "The prohibition against double jeopardy unquestionably 'forbids the prosecutor to use the first proceeding as a trial run of his case.'" *Id*. at 508 n.24, 98 S. Ct. at 832 n.24, *quoting*

13

Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 287-88 (1965). Because the trial court had feasible alternatives to declaring a mistrial, under the strictest scrutiny, there was no manifest necessity to declare the mistrial. *See id.* at 507-08, 98 S. Ct. at 831-32.

¶23 The state cites *Givens* in support of its claim of manifest necessity, but that case does not support the state's position. There, this court observed that "the mere availability of another alternative does not render a mistrial order an abuse of discretion." *Givens*, 161 Ariz. at 281, 778 P.2d at 646. We concluded that the trial court acted within its discretion in finding manifest necessity "where [the] defendant's own conduct gave rise to the declaration of mistrial," and we assumed that the court had first considered its possible alternatives. *Id.* at 281-82, 778 P.2d at 646-47. Here, the defendant's conduct was not at issue and the problem that gave rise to the mistrial was entirely within the prosecutor's control.

¶24 At oral argument, the state emphasized that the mistrial benefited Aguilar because the trial court intended to allow in the new evidence and the mistrial gave Aguilar time to prepare for it. But having additional evidence admitted against him clearly was not to Aguilar's benefit. The mistrial was intended to and clearly did benefit the prosecution. Unless the mistrial was at Aguilar's request or due to his actions, *see id*. at 280-82, 778 P.2d at 645-47, or unless the "mistrial has been granted in the *sole* interest of the defendant," *Gori*, 367 U.S. at 369, 81 S. Ct. at 1527 (emphasis added), double jeopardy bars a mistrial. Furthermore, as the state conceded, the trial court was not under a legal

obligation to admit the new evidence but rather had the discretion to decide whether or not to admit it.

**¶25** We conclude that "along the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny," *Washington*, 434 U.S. at 510, 98 S. Ct. at 833, the failure of a prosecutor to discover and disclose evidence requires an exacting inquiry. Under such circumstances, we are required to strike the balance in favor of the defendant. *See Downum*, 372 U.S. at 738, 83 S. Ct. at 1035-36.

**Conclusion**

**¶26** There was no manifest necessity and thus the trial court abused its discretion in declaring a mistrial. For this reason, retrial was barred by double jeopardy. We vacate the convictions and sentences entered at the conclusion of Aguilar's second trial and remand this matter to the trial court with instructions to dismiss the charges against Aguilar, with prejudice. *See State v. Minnitt*, 203 Ariz. 431, ¶ 45, 55 P.3d 774, 783 (2002).

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge

_____
PETER J. ECKERSTROM, Judge