NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EDWARD GLEBA, *Appellant.*

No. 1 CA-CR 14-0237
FILED 2-4-2016

Appeal from the Superior Court in Maricopa County
No.  CR2012-148610-001
The Honorable Phemonia L. Miller, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

Edward Gleba, San Luis
*Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

---

**B R O W N**, Judge:

**¶1**　　　　Edward Gleba appeals his convictions and sentences for four counts of aggravated driving under the influence of intoxicating liquor ("aggravated DUI").  Counsel for Gleba filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), advising that after searching the record on appeal, he was unable to find any arguable grounds for reversal.  Gleba was granted the opportunity to file a supplemental brief *in propria persona*, and he has done so.[1]

**¶2**　　　　Our obligation is to review the entire record for reversible error.  *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).  We view the facts in the light most favorable to sustaining the conviction and resolve all reasonable inferences against Gleba.  *State v. Guerra*, 161 Ariz. 289, 293 (1989).  Finding no reversible error, we affirm.

### BACKGROUND

**¶3**　　　　The State charged Gleba with Count 1, driving while under the influence of intoxicating liquor with a suspended license, in violation of Arizona Revised Statutes ("A.R.S.") sections 28-1381(A)(1), -1383(A)(1); Count 2, driving while under the influence of intoxicating liquor with a blood alcohol concentration of 0.08 or more with a suspended license, in violation of A.R.S. §§ 28-1381(A)(2), -1383(A)(1); Count 3, driving while under the influence of intoxicating liquor with two prior DUI violations within 84 months, in violation of A.R.S. §§ 28-1381(A)(1), -1383(A)(2); and Count 4, driving while under the influence of intoxicating liquor with a blood alcohol concentration of 0.08 or more with two prior DUI violations

---

[1]　　　　Gleba has also filed a "Motion To Strike Answering Brief as Untimely [ARCP 31.13(a)]," asking this court to strike any answering brief filed by the State filed after June 22, 2015.  Pursuant to this court's order dated February 19, 2015, "the filing of an answering brief by [the] State of Arizona shall await further order of this court."  As we have not ordered an answering brief to be filed by the State, we deny Gleba's motion as moot.

within 84 months, in violation of A.R.S. §§ 28-1381(A)(2), -1383(A)(2). The following evidence was presented at trial.

¶4　　　　On the evening of April 6, 2012, Detective Dyer and Officer Engram were on routine foot patrol in downtown Scottsdale. At approximately 11:00 p.m., while walking in the northbound direction of Brown Street, Dyer heard a "screeching" and "scraping" noise that he "immediately recognized" as the sound of a flat tire, and Engram heard a "loud thumping" sound. When Dyer and Engram turned in the direction of the noise, they observed a black Dodge Charger traveling southbound on Brown from Camelback. They observed the driver, Gleba, pull the car over to the side of the street, exit from the driver's side of the vehicle, and look at the rear driver's side tire.

¶5　　　　Although Dyer observed no other individuals in or near the vehicle as he approached Gleba, Gleba suggested he was not the driver, commenting that "she" was driving but failed to identify who that person was. While speaking with Gleba, Dyer detected an odor of alcohol and noted that Gleba had bloodshot, watery eyes and slurred speech. Because Dyer was not equipped to handle a DUI investigation, he waited for a backup unit.

¶6　　　　When Officer Rowley arrived, Gleba was seated on the curb. Rowley noted Gleba had bloodshot, watery eyes, slurred speech, and an odor of alcohol. Gleba consented to field sobriety tests and Rowley detected numerous cues of impairment. Gleba admitted he had been drinking and consented to a blood test, which later revealed Gleba's blood alcohol content ("BAC") was .209.

¶7　　　　The State presented evidence that Gleba's license had been suspended "indefinitely" since 2008, and therefore was suspended on April 6, 2012. A custodian of records for the Motor Vehicle Division of the Arizona Department of Transportation ("Department") testified that multiple notices of suspension had been sent to Gleba's address of record.

¶8　　　　Gayle Jarrell, a former Phoenix police officer with experience as a vehicle inspector and accident reconstructionist, testified for the defense. Based on his training and experience, Jarrell opined that Gleba's vehicle sustained no damage as would result if the rim of the tire was making an audible scraping sound along the road.

¶9　　　　Gleba testified that immediately before the police approached him, he had left a hotel restaurant to return to his car to charge his phone. When he arrived at the vehicle, he noticed the flat tire. Gleba testified that

he "had absolutely not" been driving when Dyer and Engram approached him.

**¶10**          The jury found Gleba guilty as charged.  After finding he had three prior felony convictions, the trial court sentenced Gleba to concurrent ten-year terms of imprisonment for each count.[2]  This timely appeal followed.

## DISCUSSION

### A.          Sufficiency of the Evidence

**¶11**          Citing conflicting evidence and discrepancies in testimony presented at trial, Gleba first argues there was an insufficient basis for the State to file charges against him.  Although Gleba frames the issue as insufficient facts to support the charging documents, he relies on evidence presented at trial.  We therefore construe his argument as a challenge to the sufficiency of the evidence to support his convictions.

**¶12**          In evaluating a challenge to the sufficiency of evidence, we consider the evidence in the light most favorable to sustaining the verdict and uphold the verdict "if substantial evidence exists to support [it]." *State v. Stroud*, 209 Ariz. 410, 411, ¶ 6 (2005).  Substantial evidence "must be evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt."  *Id*. at 412, ¶ 6 (internal quotations omitted).

**¶13**          To convict Gleba of the four counts of aggravated DUI, the State was required to prove that Gleba: (1) was in actual physical control of a vehicle, (2) was under the influence and impaired, (3) had a BAC of 0.08 or greater, (4) had a suspended license, and (5) had two prior DUI violations within 84 months.  A.R.S. §§ 28-1381(A)(1), (A)(2), -1383(A)(1), (A)(2).

---

[2]          At sentencing, the trial court found Gleba had violated his probation in two unrelated matters, CR2010-006297 and CR2011-006270.  The court imposed mitigated, concurrent terms of one and one-half years imprisonment in those cases and credited Gleba with 562 and 568 days of presentence incarceration, respectively.  Because his presentence incarceration credit was applied to CR2010-006297 and CR2011-006270, Gleba was not credited with presentence incarceration on his DUI convictions.

**¶14** Gleba does not dispute that he was impaired or that he had a BAC well over .08 at the time he was taken into custody. Nor does he dispute he had two prior DUI violations within 84 months. Instead, he argues he never drove his vehicle after he commenced drinking that evening and was simply standing by his car to charge his phone when approached by Dyer and Engram. In support, Gleba points to his own testimony as well as that of his expert, Jarrell, who concluded there was no damage to the vehicle's tires as would occur if the vehicle was driven with a substantially flat tire. Nonetheless, Dyer and Engram testified they heard a noise that sounded like a car being driven with a flat tire and they saw Gleba driving the vehicle. Given these eyewitness accounts, there was sufficient evidence to support the jury's verdicts. *See Guerra*, 161 Ariz. at 293 ("When reviewing the sufficiency of the evidence, an appellate court does not reweigh the evidence" and "[i]f conflicts in evidence exist, the appellate court must resolve such conflicts in favor of sustaining the verdict against the defendant.").

**¶15** Gleba does not dispute that his license was suspended, but he challenges the sufficiency of the evidence that he had knowledge of the suspension. Specifically, Gleba contends that he "moved a number of times during the period in question" and never received notice that his license was suspended.

**¶16** "Driving under the influence is a strict liability offense, but aggravated DUI based on a suspended license requires proof that the defendant drove a motor vehicle under the influence of alcohol while his license was suspended, and that he knew or should have known of the suspension." *State v. Cifelli*, 214 Ariz. 524, 527, ¶ 12 (App. 2007). Pursuant to statute, the Department "must provide written notice to a licensee informing him when his license is suspended." *Id.*; *see also* A.R.S. § 28-3318(A)(1). "The written notice must be sent by mail to the address provided to the Department on the licensee's application, unless the licensee has notified the Department of a change" in address pursuant to statute. *Cifelli*, 214 Ariz. at 527, ¶ 12; (citing A.R.S. § 28-448(A)(2) (requiring licensees, including persons with a license that is "suspended, revoked, or canceled," to "notify the department within ten days" of any change in address); A.R.S. § 28-3318(C)). Service of the notice is "complete on mailing." A.R.S. § 28-3318(D). Section 28-3318(E) provides: "Compliance with the mailing provisions of this section constitutes notice of the suspension . . . for purposes of prosecution under § 28-1383[.] The state is not required to prove actual receipt of the notice or actual knowledge of the suspension[.]"

¶17 "Although the statutory scheme establishes a presumption that the licensee has received notice, and therefore has actual knowledge, of his license suspension when the Department complies with the mailing requirement, this presumption is rebuttable and a defendant may demonstrate that he did not receive the notice." *Cifelli*, 214 Ariz. at 527, ¶ 13. "[O]nce the state proves mailing of the notice of suspension, the state no longer has the burden to prove receipt of the notice or actual knowledge of its contents. The burden then shifts to the defendant to show that he did not receive the notice." *Id.* (internal citation and quotation omitted).

¶18 Here, the State presented evidence of numerous notices of license suspensions being mailed to Gleba's address of record. Although Gleba testified to separating from his wife during the relevant period, he never claimed a disruption in his receipt of mail, nor did he assert that he failed to receive the notices of suspension. On this record, the trial court properly instructed the jurors that they could consider the statutory notice presumption as satisfying the mens rea element for the charged offenses.

## B. Pre-Charge Delay

¶19 Gleba next contends he was prejudiced by the State's delay in charging him. Specifically, Gleba argues he lost the ability to gather the surveillance video of the hotel where he had been dining. Because the record does not reflect that Gleba raised this claim in the trial court, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice."[3] *Id.* at 567, ¶ 20.

¶20 On April 6, 2012, Gleba was taken into custody. He was soon released, however, and the State did not file a complaint against Gleba until September 14, 2012 and did not charge him by information until January 10, 2013.

¶21 For a charging delay to violate due process, a defendant must show that (1) the delay was intended to gain a tactical advantage or to harass him, and (2) the delay actually and substantially prejudiced him. *See State v. Dunlap*, 187 Ariz. 441, 450 (App. 1996). "[A] defendant has a heavy

---

[3] Gleba likewise failed to raise in the trial court the remainder of the issues he identifies in his supplemental brief and we therefore review them under the fundamental error standard. *See Henderson*, 210 Ariz. at 567, ¶ 19.

burden to prove that pre-indictment delay caused actual prejudice; the proof must be definite and not speculative." *Id.* (internal quotation omitted). "To make a showing of actual and substantial prejudice, it is not enough to show the mere passage of time nor to offer some suggestion of speculative harm; rather the defendant must present concrete evidence showing material harm." *Id.* (internal quotation omitted).

¶22 Gleba does not argue, and the record does not reflect, that the State delayed charging Gleba to gain a tactical advantage over him. Equally important, Gleba has only speculated that the hotel may have had surveillance footage that would have included his curbside vehicle, without any evidence to support this claim. Therefore, Gleba has not satisfied his burden of establishing a violation of due process.

## C. Probable Cause

¶23 Citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), Gleba contends he was denied constitutional safeguards by being detained pursuant to the charging documents without a probable cause determination. As explained in *Gerstein*, states may have different pretrial procedures, but each "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." 420 U.S. at 125. Under Arizona law, a petitioner "arrested pursuant to a warrant [] has had his informal judicial determination of probable cause[.]" *Rockwood v. Superior Court*, 27 Ariz. App. 338, 339 (1976).

¶24 On October 24, 2012, the State filed a direct complaint and warrant for arrest. Therefore, Gleba was taken into custody pursuant to a warrant, which issued upon a *Gerstein*-compliant judicial determination of probable cause.

## D. Racial Composition of Jury

¶25 Gleba challenges the composition of the jury because no "Mexican-Americans" were impaneled, notwithstanding that "the percentage of Mexican-Americans in the general population" is approximately "30%."

¶26 To establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive"
> group in the community; (2) that the representation of this

group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).  When these requirements are satisfied, the burden then shifts to the state to demonstrate a significant state interest "manifestly and primarily" advanced by the selection criteria at issue.  *Id*. at 367.

**¶27**    There is no dispute regarding the first prong.  Gleba has failed to present sufficient evidence to assess the second prong, however, relying on an unsubstantiated figure.  More importantly, Gleba has not argued, and our review of the record does not reveal, any basis for concluding that any underrepresentation among the jurors in this case is due to systematic exclusion of Hispanics in the jury selection process.  We therefore find no error.

### E.    Number of Jurors

**¶28**    Gleba contends the trial court erred by impaneling only eight jurors when he was exposed to a possible forty-year sentence.  However, even assuming that Gleba's sentences could have been imposed consecutively, our supreme court has held that once a jury of less than twelve persons begins deliberations, a trial court cannot impose a sentence that is thirty years or greater.  *See State v. Soliz*, 223 Ariz. 116, 120, ¶ 16 (2009) ("By failing to request a jury of twelve, the State effectively waived its ability to obtain a sentence of thirty years or more.").

### F.    Speedy Trial Violation

**¶29**    Gleba contends his right to a speedy trial was violated because he was not tried within 150 days of his arraignment as required by Arizona Rule of Criminal Procedure ("Rule") 8.2(a)(1).  Gleba was already in custody at the time of his arraignment on January 10, 2013 and remained in custody thereafter.  The trial court set the initial last day for June 16, 2013, in accordance with Rule 8.2.  On April 29, 2013, Gleba filed a motion to suppress, challenging the reliability of the blood test.  The court subsequently held two evidentiary hearings on the matter, and excluded time from May 31, 2013 through September 30, 2013 (122 days) to address the issue, with a new last day of October 16, 2013.

¶30        On August 9, 2013, the trial court denied the motion to suppress.  Given the time excluded, Gleba's first trial timely commenced on October 7, 2013.  The jury deadlocked, however, and the court declared a mistrial on October 16, 2013.  Pursuant to Rule 8.2(c), "[a] new trial ordered after a mistrial . . . shall commence within 60 days of the entry of the order of the court."  Gleba's second trial began December 2, 2013, with a new last day calculation of December 15, 2013.  Therefore, we reject Gleba's assertion that his speedy trial rights were violated.

### G.        Duplicitous Charges

¶31        Gleba contends the trial court erred by permitting the State to bring duplicitous charges.  Specifically, Gleba contends that all four DUI convictions arise out of the same alleged driving incident, and the constitution prohibits the imposition of multiple punishments for the same offense.

¶32        By statute, an "act . . . which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."  A.R.S. § 13-116.  To determine whether a defendant's criminal conduct constitutes a single act for purposes of A.R.S. § 13-116, we subtract "the evidence necessary to convict of one crime" and if "the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13-116."  *State v. McDonagh*, 232 Ariz. 247, 250, ¶ 12 (App. 2013) (internal citation and quotations omitted).

¶33        Here, a single act of driving was common to all four aggravated DUI offenses of which Gleba was convicted.  Because the elements of no count could be satisfied after subtracting the act of driving, the sentences for the four convictions could only be imposed concurrently.  The trial court correctly imposed concurrent sentences, and thus the charges were not duplicitous.

### H.        Declaration of Mistrial

¶34        Gleba argues the trial court erred in declaring a mistrial and therefore the second trial violated his right against double jeopardy.  In evaluating a double jeopardy claim, we review the trial court's decision to declare a mistrial for an abuse of discretion.  *State v. Aguilar*, 217 Ariz. 235, 238, ¶ 7 (App. 2007).  Both the federal and state constitutions protect a defendant from being tried multiple times for the same criminal offense.  U.S. Const. amend. V; Ariz. Const. art. 2, § 10.

¶35          Nonetheless, the defendant's right to a single trial "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Aguilar*, 217 Ariz. at 238, ¶ 10 (internal quotations omitted). "When the court declares a mistrial sua sponte, retrial will not be barred if there was a manifest necessity for the mistrial or . . . the ends of public justice will otherwise be defeated." *Id.*

¶36          In the first trial, the jury sent the court a note that it had reached an impasse. In response, the court inquired in writing whether the jurors were "deadlocked on all counts." The court brought the jurors into the courtroom, and, in the presence of counsel, asked the jurors whether they believed that, with "further deliberations," they may be able to reach a verdict within a reasonable period of time. The jurors responded they did not believe they could do so.

¶37          Pursuant to Rule 22.4,

> if the jury advises the court that it has reached an impasse in its deliberations, the court may, in the presence of counsel, inquire of the jurors to determine whether and how court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the judge may direct that further proceedings occur as appropriate.

Applying the rule to this case, the trial court acted within its discretion in responding to the jury's impasse notification. Although the court may also have properly elected to give the jury more time to deliberate, we cannot say the court abused its discretion by discharging the jurors and declaring a mistrial upon being informed that the jurors were deadlocked on every count.

## I.          Vindictive Prosecution

¶38          Gleba contends the State engaged in vindictive prosecution by "pil[ing] on all manner of prior felony convictions," allegedly in response to his exercise of the right to a jury trial, and the trial court therefore erred by imposing sentences based on those prior felony convictions.

¶39          Contrary to Gleba's claims, the record does not reflect that the State alleged multiple priors as a means of retaliating for Gleba's refusal to enter a plea agreement. The State filed the allegations of prior felony convictions early in the case, while plea negotiations and settlement were still ongoing. Therefore, because there is no evidence to support Gleba's

claim of prosecutorial vindictiveness, the trial court did not err by finding Gleba had multiple prior felonies and sentencing him accordingly.[4]

## CONCLUSION

**¶40** We have searched the entire record for reversible error and have found none. All of the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The record shows Gleba was present at all pertinent proceedings and was represented by counsel. Gleba had an opportunity to speak before sentencing, and the sentence imposed was within the statutory limits. Accordingly, we affirm Gleba's convictions and sentences.

**¶41** Upon the filing of this decision, counsel shall inform Gleba of the status of the appeal and his options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Gleba shall have thirty days from the date of this decision to proceed, if he so desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[4] Gleba contends that the trial judge lacked the legal authority, as a commissioner, to preside over his trial. However, the judge had been appointed as a judge *pro tempore* during the relevant trial proceedings. Additionally, Gleba raises several issues implicating ineffective assistance of counsel, but such issues must be raised in the first instance by filing a petition for post-conviction relief. *See State v. Sprietz*, 202 Ariz. 1, 3, ¶ 9 (2002).