NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellant*,

*v.*

WILLIAM GEORGE PISTOLE, *Appellee*.

No. 1 CA-CR 16-0011
FILED 10-6-2016

Appeal from the Superior Court in Yavapai County
No. P1300CR201401223
The Honorable David L. Mackey, Judge

**VACATED**

COUNSEL

Yavapai County Attorney's Office, Prescott
By Dana E. Owens
*Counsel for Appellant*

C. Kenneth Ray, II, P.L.L.C., Prescott
By C. Kenneth Ray II
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge John C. Gemmill[1] joined.

---

**W I N T H R O P**, Judge:

**¶1**         The state appeals the superior court's order dismissing this case with prejudice.  For the reasons that follow, we vacate the court's order and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

**¶2**         A grand jury indicted William George Pistole on one count of aggravated driving under the influence, a class 4 felony.  The state alleged that Pistole committed the offense while on felony release in two other cases.  Three days were allotted for trial, which was set to begin September 2, 2015.

**¶3**         On September 4, 2015, during trial and over the state's objection, the superior court granted defense counsel's request for an instruction pursuant to *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964), based on the state's failure to preserve a jail video recording of Pistole's blood draw, which defense counsel argued could have supported his defense of tampering.  Trial was set to resume September 9 with any rebuttal witnesses, jury instructions, and closing arguments.

**¶4**         On September 8, the state filed a petition for special action with the Court of Appeals challenging the *Willits* ruling.  On September 9, after hearing telephonic argument, the Court of Appeals granted the state's request for a stay, agreed to expedite the briefing schedule, and deferred a ruling on the merits to allow defense counsel to prepare a written response.

**¶5**         Pistole's attorney reminded the superior court at a hearing later that morning that she was scheduled to begin a new job at the Yavapai County Public Defender's Office on September 14, the following Monday. Yavapai County Public Defender John Napper asked the court to

---

[1]      The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

immediately appoint his office as co-counsel. Minutes later, however, Napper informed the court that other conflicts prevented the Public Defender's Office from representing Pistole in this case, but the office might be able to institute a screening process to allow present defense counsel to continue to represent Pistole.

¶6 After consulting with the jury on availability, the court set trial to resume on September 29, ordered defense counsel to continue to represent Pistole, and ordered the Public Defender's Office to institute appropriate screening. On September 18, however, Napper informed the court that, after reviewing the ethical rules and consulting with the State Bar, he had determined that screening was not possible. Pistole's attorney formally moved to withdraw as counsel.

¶7 At a hearing on September 28 to discuss whether the conflict required a mistrial, defense counsel told the court after consulting with her client that she believed "Mr. Pistole would be willing to waive a conflict to have me stay on the case with the reality that that doesn't take care of the other conflicts that we have." At the same time, the parties were notified electronically that the Court of Appeals had accepted jurisdiction of the special action and granted relief, holding that a *Willits* instruction was not warranted. Although defense counsel argued that the presence of new counsel at this stage of trial "would be confusing as heck to the jury," the Public Defender offered to find Pistole independent counsel before 9 a.m. the following day, the date trial was set to resume. The court instead asked Pistole if he wanted to proceed to trial with his current defense counsel, or have the court grant defense counsel's motion to withdraw, declare a mistrial, and set a date for retrial. Pistole said he did not know what to do: "I need to have a lawyer that doesn't have a conflict I guess. I don't know what to do."

¶8 The court subsequently granted defense counsel's motion to withdraw, ordered the Public Defender's Office to assign counsel with no conflict, and without objection, *sua sponte* declared a mistrial. The court found the withdrawal necessary because Pistole was unable to consult independent counsel on whether he should waive the conflict. The court also found, however, that "the County Attorney's Office was well aware of this impending conflict when they chose to take action with respect to a [s]pecial [a]ction"; special action relief "is not a right, but is an option"; and the state's lack of understanding and empathy with defense counsel, the court's schedule, and the jury "aggravated me substantially."

¶9 New defense counsel moved to dismiss the case with prejudice on grounds that Pistole could not be retried without violating his

double jeopardy rights, because the mistrial resulted from the prosecution's calculated decision to seek a stay from the Court of Appeals "to obtain a tactical advantage," knowing that "the stay would have a detrimental impact on Mr. Pistole's right to counsel." The state responded that "the [s]pecial [a]ction was not filed for an improper purpose, but instead to ensure that both parties received a fair trial"; neither party was aware of the potential conflict at the time the state filed its petition for special action; and retrial was permissible because Pistole did not object to the mistrial, and because of defense counsel's conflict, "[t]here were no feasible alternatives that would have allowed the trial to continue, making the mistrial a manifest necessity."

¶10        After hearing testimony from former defense counsel and the prosecutor, the court dismissed the case with prejudice. The court reasoned, "I cannot find that the State's actions in this case warranted or warrant a finding that jeopardy had attached and that dismissal with prejudice is warranted. However, the case law that's been cited talks about not only the State's obligation to guarantee a Defendant a fair trial on one occasion and not subject a Defendant to double jeopardy, but also talks about the Court's obligation in that regard. . . . [T]he Court finds that its own conduct falls short of what is required constitutionally of the Court hearing a criminal matter and finds that based upon the errors made by the Court that this Court is unable to find a manifest necessity for the mistrial."

¶11        Specifically, the court found: 1) it made a mistake of law in deciding to give a *Willits* instruction, which triggered the filing of the special action petition, causing the delay that resulted in Pistole losing trial counsel and a declaration of mistrial; 2) it failed to "fully examine the Court's ability to set this very important criminal trial on another date and time and vacate other matters on the Court's calendar"; 3) "it erred in not ordering that the Public Defender assign independent advisory counsel when the issue of a conflict was first raised on September 9th, 2015"; and 4) "it erred when it misunderstood the representation of State's counsel . . . during the September 28th, 2015 [h]earing . . . I thought the state was []conceding knowledge of a conflict with witnesses that they intended to call at the Aggravation Phase," prompting the court to declare a mistrial when its inclination up until then was "to require that [Pistole's defense counsel] complete the trial the next day through the argument as well as through any Aggravation Phase."

¶12        The state filed a timely notice of appeal of the order dismissing the case with prejudice. We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and 13-4032(1).

**ANALYSIS**

**¶13**    The state argues that the trial court abused its discretion in dismissing this case with prejudice, because, under these circumstances, manifest necessity required the mistrial.  We agree.

**¶14**    The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides a person may not "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  Arizona's constitution provides similar protection.  *See* Ariz. Const. art. 2, § 10 ("No person shall be compelled in any criminal case to . . . be twice put in jeopardy for the same offense.").

**¶15**    The Double Jeopardy Clause not only protects a defendant's right to be free from multiple prosecutions, but also "embraces the defendant's valued right to have his trial completed by a particular tribunal."  *Arizona v. Washington*, 434 U.S. 497, 503 (1978) (internal punctuation and citation omitted).  The defendant's right to a single trial, however, "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."  *Wade v. Hunter*, 336 U.S. 684, 689 (1949).  When the court declares a mistrial *sua sponte*, retrial will not be barred if "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice will otherwise be defeated."  *Washington*, 434 U.S. at 506 n.18.

**¶16**    We review a court's decision to grant a mistrial for abuse of discretion. *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986).  We similarly review a trial court's ruling on manifest necessity for abuse of discretion.  *State v. Aguilar*, 217 Ariz. 235, 239, ¶ 13, 172 P.3d 423, 427 (App. 2007).  A court abuses its discretion when it makes an error of law or when there is no substantial evidence to support its conclusion.  *See State v. Green*, 200 Ariz. 496, 502, ¶ 28, 29 P.3d 271, 277 (2001).

**¶17**    We conclude that under the circumstances of this case, manifest necessity required a mistrial, and the court accordingly abused its discretion in dismissing the case with prejudice.  As the trial court found and appellee's counsel concedes, this is not a case where the prosecutor engaged in misconduct intended to provoke a mistrial.  Nor does the record support the court's conclusion that its conduct fell "short of what is required constitutionally of the Court," thereby implicating Pistole's double jeopardy rights.  Under the doctrine of manifest necessity, a trial judge should not foreclose a defendant's option to continue a trial unless "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the

proceedings." *United States v. Jorn*, 400 U.S. 470, 485 (1971). The court in this case scrupulously exercised its discretion and explored all reasonable alternatives before finally determining that a mistrial was necessary.

¶18      Although in hindsight the court made a mistake of law in deciding to give a *Willits* instruction, this is not the type of trial error that implicates double jeopardy. As the Supreme Court has recognized, "a criminal trial is, even in the best of circumstances, a complicated affair to manage." *Id.* at 479. The relevant question is not whether the judge erred in deciding to give a *Willits* instruction, but rather whether the judge scrupulously exercised judicial discretion in addressing the subsequent events that threatened to derail the on-going trial. *See id.* at 485.

¶19      The court did not err, much less infringe on Pistole's double jeopardy rights, by failing to set aside other matters so trial could resume earlier. The Court of Appeals had granted a stay to allow defense counsel to respond to the State's special action petition on the *Willits* instruction, and defense counsel had informed the court she needed time to obtain trial transcripts and had been given until the following Thursday to respond to the petition, three days after she was to start with the Public Defender's Office. Under these circumstances, the court's decision to delay resumption of trial was necessitated by the stay, and had no impact on defense counsel's conflict, which ultimately prompted the declaration of a mistrial. Accordingly, the court's decision to delay resumption of trial for two and half weeks was not improper.

¶20      Nor did the court err by failing to immediately appoint independent counsel on September 9 to advise Pistole on whether he should waive the impending conflict. The court ordered defense counsel to continue to represent Pistole in this case, ordered the Public Defender's Office to "screen her off from contact with other attorneys regarding this matter," and set a schedule to brief "whether or not that creates such a conflict that I should remove you from the case." It was not until after defense counsel had already joined the Public Defender's Office that Public Defender John Napper notified the court that the State Bar had advised of its view that the screening he had offered to undertake to remedy the conflict was not adequate under the circumstances, and defense counsel formally moved to withdraw from representing Pistole. The measures the court took prior to declaring the mistrial were reasonable under the circumstances and did not violate Pistole's double jeopardy rights.

¶21      Finally, before granting the request to withdraw and declaring a mistrial, the trial court made a "real effort to determine whether there were any feasible alternatives to declaring a mistrial." *McLaughlin*,

150 Ariz. at 277, 723 P.2d at 95. At the hearing the day before trial was scheduled to resume, the court reiterated its prior order directing defense counsel to continue representing Pistole notwithstanding the State Bar's advice to the contrary, and attempted to ascertain whether Pistole wanted to waive any conflict and resume trial with the same jury and defense counsel. After consulting with her client, defense counsel told the court, "I believe that Mr. Pistole would be willing to waive a conflict to have me stay on the case with the reality that that doesn't take care of the other conflicts that we have." After being informed that no *Willits* instruction would be given pursuant to the recent order from the Court of Appeals, however, Pistole was less certain: "Well, Your Honor, I guess I kind of said that I don't know what to do. I need to have a lawyer that doesn't have a conflict I guess. I don't know what to do."

¶22 Although the court could have, at this stage, appointed independent advisory counsel to allow Pistole to make a more informed decision on whether to waive the conflict and proceed with trial before the same jury, as defense counsel had noted, Pistole could not execute a waiver on behalf of the other parties to the conflict, and thus the conflict would remain. Under these circumstances, the court did not abuse its discretion by allowing defense counsel to withdraw and by *sua sponte* declaring a mistrial—even if it did so in part based on a misunderstanding that a more direct conflict would arise in other proceedings.

¶23 Taking all these circumstances into consideration, we conclude that the court did not abuse its discretion in declaring a mistrial, but did err in later finding that the court's perceived failures required dismissal of the charges with prejudice.

## CONCLUSION

¶24 For the foregoing reasons, we vacate the order dismissing this case with prejudice and remand for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED:  AA