18 P.3d 702

Selena Lee GUSLER, Petitioner,

v.

Hon. Michael O. WILKINSON, Judge of the Superior Court of the State of Arizona, in and for the COUNTY OF MARICOPA, Respondent,

State of Arizona, Real Party in Interest.

No. CV–00–0089–SA.

Supreme Court of Arizona.
En Banc.

March 2, 2001.

Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender and C. Daniel Carrion, Deputy Public Defender and Garrett W. Simpson, Deputy Public Defender, Phoenix, Attorneys for Selena Lee Gusler.

Richard M. Romley, Maricopa County Attorney by Arthur Hazelton, Deputy County Attorney, Phoenix, Attorneys for State of Arizona.

## OPINION

McGREGOR, Justice.

¶ 1 The issue presented is whether the state can retry the defendant on a manslaughter charge as to which the jury may have indicated, in a note signed by its foreperson, that it had reached a not guilty verdict. We hold that although the note cannot conclusively be construed as a verdict, the defendant may not be retried on the manslaughter charge because the trial judge prematurely granted the state's motion for mistrial. We further hold that the state is not estopped from retrying the remaining charges against the defendant.

### I.

¶ 2 The defendant, while driving on the freeway, lost control of her vehicle, crossed the median, and traveled into the path of two oncoming cars. The first car carried six young women, one of whom sustained injury when the car swerved to avoid the defendant.

The defendant hit the second car, instantly killing the driver, its only occupant. This collision also caused injury to defendant's passenger.

¶ 3 A grand jury indicted the defendant on nine separate counts. The first count charged the defendant with manslaughter for the death of the driver of the second car. Two counts of aggravated assault resulted from the injuries to the woman in the first car and to the defendant's passenger. The five counts of reckless endangerment related to the potential injury to the five remaining women in the first car. Finally, the defendant faced a single count of possession of marijuana.

¶ 4 When instructing the jury with respect to count one, the manslaughter charge, the trial judge told the jury it also could consider negligent homicide, a lesser-included offense. The trial judge explained, "You may find the defendant guilty of the less serious crime only if you find unanimously the State has failed to prove the more serious crime beyond a reasonable doubt but has proved the less serious crime beyond a reasonable doubt, or if, after reasonable efforts, you're unable to reach a verdict as to the more serious offense."

¶ 5 During the course of deliberations, the jury submitted a series of notes to the court. After deliberating approximately four hours, the jury sent the following note, signed by the foreperson: "We are deadlocked 7–5— Count 1 Talked about crucial issue for 2 hours—no movement Not guilty on manslaughter Deadlocked on negligent homicide—What do we do?"

¶ 6 The trial judge met with counsel to discuss the note. To avoid disclosing the status of the jury's deliberations, however, the trial judge told counsel only that the note stated, "We are deadlocked, Count 1. Talked about crucial issue for two hours, no movement. Deadlocked. What do we do?"

¶ 7 After discussing various options with counsel, the judge brought the jury into the courtroom. Cautioning the jury against revealing the state of its deliberations, the judge asked whether it had reached a verdict on any of the counts. The foreman an-

swered, "On the marijuana issue." The judge then asked, "Any other counts? 'Yes' or 'No' is all I need." The foreman responded, "No ." After determining that none of the jurors thought additional deliberation would produce verdicts on the other counts, the judge sent the jury back to decide whether additional evidence, argument or instructions would help them reach any additional verdicts and asked the jury to "give [the court] any verdict you've reached already."

¶ 8 The jurors subsequently returned a verdict on the possession of marijuana charge, accompanied by another note asking for additional definitions of "substantial risk, unjustifiable risk, impairment." After meeting with counsel, the judge sent a note to the jury, instructing them to consult the definitions they previously had been provided. In the same note, the court asked again whether the jury would be able to reach a decision on the remaining counts. When the jury indicated that it remained at an impasse, the judge brought the jurors back into the courtroom. The court formally accepted the guilty verdict on the drug possession charge and declared a mistrial with respect to the eight remaining counts.

¶ 9 Only after he discharged the jury did the judge advise the lawyers of the full content of the crucial jury note indicating a possible verdict on the manslaughter charge. Defense counsel immediately asserted that the court should have entered a not guilty verdict on that charge; counsel repeated his argument in post-trial motions, which the court denied.

¶ 10 The defendant then filed a petition for special action with the court of appeals, which accepted jurisdiction but denied relief. We granted review and exercise jurisdiction pursuant to Article VI, section 5.3 of the Arizona Constitution.

## II.

¶ 11 The defendant asserts that the jury's note indicated it had reached a verdict on the manslaughter charge, and that retrial of that charge would constitute double jeopardy. Defendant's argument implicates the fundamental constitutional guarantee that a person cannot be brought into jeopardy more than once for the same offense. U.S. CONST. amend. V; *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The underlying principle prohibiting double jeopardy instructs "that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." *Benton*, 395 U.S. at 796, 89 S.Ct. 2056 (quoting *Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

### A.

¶ 12 The defendant argues that the note at issue qualifies as a verdict under Rule 23.1 of the Arizona Rules of Criminal Procedure. It clearly does not. Rule 23.1.a dictates that a verdict must be written, signed by the foreperson, and delivered in open court. As the defendant recognizes, the note cannot meet the last of Rule 23.1's requirements because no verdict as to manslaughter was ever delivered in open court. Requiring the verdict to be delivered in open court is more than a formality. Delivering the verdict in the presence of the jury "enable[s] the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Miranda v. United States*, 255 F.2d 9, 17 (1st Cir.1958); *see also State v. Webb*, 186 Ariz. 560, 563, 925 P.2d 701, 704 (App.1996); *State v. Kiper*, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App.1994). We cannot simply ignore this requirement of the rule.

¶ 13 We also recognize, however, that in this instance the judge's decision not to reveal the full content of the note made compliance with Rule 23.1 impossible. We therefore next consider whether, under the facts of this case, we should consider the note a verdict despite its failure to comply with Rule 23.1. We will assume, without deciding, that a jury's note can constitute a verdict in some instances, even though it does not strictly comply with governing rules. To

gain that status, a note must provide "clear and uncontradicted evidence" that it "represents the definite and final expression of the jury's intent with respect to the disposition of the factual issues presented by a particular case ." *Stone v. Superior Court,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 816–817 (1982). If, however, the note constitutes only an interim report on the jury's deliberations, it cannot be regarded as a verdict.

¶ 14 We cannot determine whether this jury's note reflects a final verdict or an earlier stage in deliberations. A jury may "render a verdict on a lesser-included offense if, after full and careful consideration of the evidence, they are unable to reach agreement with respect to the charged crime." *State v. LeBlanc,* 186 Ariz. 437, 438, 924 P.2d 441, 442 (1996). As a consequence, the jury may deliberate the lesser-included offense if it "either (1) finds the defendant not guilty on the greater charge, or (2) after reasonable efforts cannot agree whether to acquit or convict that charge." *Id.* Because jurors need not reach a final conclusion about a greater charge before discussing a lesserincluded charge, and can reconsider the greater charge after discussing the lesser, this jury could have resumed its discussion of the manslaughter charge when and if it became probable it could reach no agreement as to the negligent homicide charge. Although the text of the note indicates that the jury *may* have reached a not guilty verdict as to manslaughter and then found itself deadlocked as to the homicide charge, we lack sufficient information to determine whether the note reflects a final verdict on the greater charge, a tentative compromise by the jury after it exhausted "reasonable efforts," or merely a report on the current stage of deliberations. The note, therefore, does not provide clear and uncontradicted evidence that the jury had reached a final verdict on the manslaughter charge.

### B.

¶ 15 Our conclusion that the jury's note did not provide clear and uncontradicted evidence that it had reached a verdict does not end our inquiry. We also must determine whether the court violated the defendant's right to be free from double jeopardy by prematurely declaring a mistrial and discharging the jury.

¶ 16 A trial judge's decision to declare a mistrial and discharge the jury when the jury proves unable to reach a verdict normally does not give rise to a double jeopardy violation. *See McLaughlin v. Fahringer,* 150 Ariz. 274, 723 P.2d 92 (1986); *Nalbandian v. Superior Court,* 163 Ariz. 126, 786 P.2d 977 (App.1989); ARIZ. R.CRIM. P. 22.4. As Justice Story explained nearly two hundred years ago:

> The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

¶ 17 The requirement that a judge find a "manifest necessity" to discharge a jury before doing so reflects the fact that the double jeopardy clause not only protects a defendant's right to be free from multiple prosecutions but also "embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949)).

¶ 18 When a true deadlock exists, double jeopardy principles permit the court to declare a mistrial. Under those circumstances, a defendant's right to have a particular jury decide his fate becomes "subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. 824. Because of the importance of a defendant's

countervailing interest, however, the state "must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant," and the burden "is a heavy one." *Id.* Indeed, the very term "manifest necessity" emphasizes "the magnitude of the prosecutor's burden." *Id.*

¶ 19 The trial judge, after receiving the jury's ambiguous note and assurance that it could not reach a verdict on any count other than the marijuana·charge, faced the difficult task of deciding whether manifest necessity required that he declare a mistrial. We conclude that, before finding the jury had reached an impasse on the manslaughter charge, the trial judge should have made a more specific inquiry of the jury.

¶ 20 The trial judge recognized the dilemma presented him when the jury's note revealed its numerical division on the negligent homicide charge. In determining what portion of the note to divulge, the judge sought to protect the information that revealed the deliberative process of the jury while conveying to counsel the jury's inability to reach a verdict. The court, acting cautiously, chose not to reveal the numerical division among the jurors. *See State v. Sabala,* 189 Ariz. 416, 419, 943 P.2d 776, 779 (App.1997) ("The better practice, however, is for the court to instruct jurors to refrain from revealing the numerical split."). The judge also decided to withhold other portions of the jury's note, and erred in doing so.

¶ 21 When the language of a communication from the jury does not clearly express its intent, particularly when the communication involves a question as basic as whether the jury has reached a verdict, the trial judge must reveal as much of the jury's communication to counsel as possible. By revealing the more complete content of this note, away from the jury to avoid any potentially coercive effect, the judge would have given the defendant's counsel an opportunity to object in a timely fashion, ask for clarification from the judge, and develop the record for review. The judge's failure to more fully describe the note's content to counsel, which prevented counsel from taking appropriate action, may have deprived defendant of her

right to obtain a verdict from the particular tribunal that heard her case.

¶ 22 The trial judge also might have resolved the ambiguity in the note by asking the jury more specific questions. The ambiguity that concerns us arose from the fact that count one included two charges, a fact not clearly taken into account in the trial judge's communications with the jurors. For instance, after receiving the note, the court asked the jurors if they had reached a verdict with respect to "count one." The jury's note, of course, suggested that the jury had reached a verdict on manslaughter, one charge in count one, but remained deadlocked on negligent homicide, the other charge that was part of count one. The foreman, therefore, appropriately answered the judge's question in the negative even if the jury had in fact reached a verdict on the manslaughter charge. So long as the jury remained deadlocked on either charge, it could not render a verdict on "count one." If the court had asked the jurors if they had reached a decision with respect to any particular charge, rather than on any "count," the jury could have clarified its position with respect to count one.

¶ 23 The absence of more specific inquiries from the court, which counsel might have requested had they known the full content of the jury's note, makes it impossible for us to conclude that manifest necessity required that the court declare a mistrial. The possibility looms large that, with more specific instructions, the jury would have been able to return a verdict on the charge of manslaughter. As long as that possibility existed, the trial court's declaration of a mistrial was premature, and therefore infringed upon the defendant's right to have her fate determined by the particular jury impaneled. For that reason, the double jeopardy clause forbids retrial of the defendant on the manslaughter charge.

### III.

¶ 24 The defendant further argues that the principle of collateral estoppel should bar retrial of any charge that is predicated upon the same mens rea as reckless manslaughter. The principle of collateral es-

**396**

toppel means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be relitigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). According to the defendant, if the jury in fact reached a not guilty verdict as to manslaughter, it could not return a guilty verdict on any charge that requires reckless behavior. We disagree.

■ ¶ 25 Well-settled Arizona law permits inconsistent verdicts. *See State v. Zakhar,* 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969) ("consistency between the verdicts on the several counts of an indictment is unnecessary"). As a result, it is possible, and permissible, that the jury could have found the defendant not guilty of manslaughter and also found her guilty of reckless behavior in the other counts. Collateral estoppel does not bar her retrial on those charges.

### IV.

¶ 26 For the foregoing reasons, we vacate the order of the court of appeals and reverse in part the judgment of the superior court. We hold that the defendant may not be retried for manslaughter, but may be retried for negligent homicide and all other charges.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice-Chief Justice, STANLEY G. FELDMAN, Justice, and FREDERICK J. MARTONE, Justice.