NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

STEVE ANDREW SUAZO, *Appellant*.

No. 1 CA-CR 17-0192
FILED 4-3-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-002227-009
The Honorable Justin Beresky, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Stephen M. Johnson PC, Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

---

**OROZCO**, Judge:

¶1        Steve Suazo appeals his convictions and sentences for conspiracy to commit sale or transportation of dangerous drugs, assisting a criminal syndicate, possession of dangerous drugs, possession of narcotic drugs, use of a wire or electronic communication in drug-related transactions, and resisting arrest.  For the following reasons, we affirm the convictions and affirm the sentences as modified.

### FACTS AND PROCEDURAL HISTORY[2]

¶2        On January 28, 2014, detectives surveilled suspected drug-dealer Irene Castro from an unmarked police vehicle parked outside her apartment building.  At approximately 3 p.m., the detectives observed a Chrysler sedan enter the apartment complex and park near Castro's residence.  The driver, Suazo, then exited the vehicle and entered Castro's apartment.  When he emerged from the apartment a few hours later, Suazo appeared to place something in the Chrysler's trunk before driving away.

¶3        Detectives followed the Chrysler from the apartment complex, and after observing traffic violations, they activated their unmarked vehicle's lights and siren, attempting to initiate a traffic stop.  Rather than stop, however, the Chrysler accelerated, drove on the wrong side of the road for a brief period, and eventually halted in the front yard of a private residence.

---

[1]        The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶4    Once the vehicle stopped, Suazo jumped out, leaving the engine running and the driver-side door open. Seeing Suazo flee, the detectives yelled, "Police. Stop." In response, Suazo momentarily looked at the uniformed officers, but then turned and ran toward the residence's open garage. While the detectives continued issuing commands, they followed Suazo into the garage and "clearly" saw him turn away and reach into his pockets.

¶5    Fearing Suazo may draw a weapon, the detectives attempted to physically restrain him. Although Suazo struggled, the detectives, working together, eventually gained control and placed him under arrest.

¶6    Once Suazo was in custody, the detectives noticed a small baggie, containing a substance later identified as heroin, on the garage floor where Suazo had stood. Within a couple of feet of the heroin baggie, the detectives also observed a salmon-colored baggie, containing a substance later identified as methamphetamine, on a garage table.

¶7    Later, the detectives searched the Chrysler and seized a cell phone propped against the center console. They also seized a toiletry bag from the trunk that contained an unmarked pill bottle. After a forensic analyst examined the contents of the cell phone, detectives learned that numerous text messages referred to Suazo explicitly, using either his legal name or a nickname, and many texts solicited or otherwise referred to drugs, including at least one text from Castro.

¶8    On March 12, 2014, a detective conducted a traffic stop of Castro's vehicle as she left her apartment complex. After determining Castro's license was suspended and impounding her vehicle, the detective conducted an inventory search of the car and discovered a candle with a false bottom that concealed two salmon-colored baggies of methamphetamine. On the same day, detectives executed a search warrant on Castro's apartment and found a digital scale, numerous firearms, ample ammunition, a "launcher" for expelling small explosives, drug ledgers, body armor, miscellaneous forms of identification bearing a variety of names, marijuana, and several prescription pill bottles.

¶9    The State then charged Suazo with one count of conspiracy to commit sale or transportation of dangerous drugs (Count 1), assisting a criminal syndicate (Count 2), possession of dangerous drugs for sale (renumbered Count 3), sale or transportation of dangerous drugs (renumbered Count 4), possession of narcotic drugs for sale (renumbered Count 5), sale or transportation of narcotic drugs (renumbered Count 6),

use of wire communication or electronic communication in drug-related transactions (renumbered Count 7), and resisting arrest (renumbered Count 8). The State also alleged aggravating circumstances and that Suazo had four historical prior felony convictions.

¶10 After a five-day trial, a jury found Suazo guilty as charged on Counts 1, 2, 7, and 8, guilty of the lesser-included offenses of possession of dangerous and narcotic drugs on Counts 3 and 5, and not guilty on Counts 4 and 6. At the sentencing hearing, the court found Suazo had two prior felony convictions and sentenced him to presumptive, concurrent terms totaling fifteen and three-quarters' years imprisonment.[3] Suazo timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[4]

## DISCUSSION

### I. Denial of Motion for Judgment of Acquittal

¶11 Suazo contends the trial court improperly denied his motion for judgment of acquittal on Counts 1, 2, and 7. For analytic clarity and brevity, we first address Count 7, and then the remaining counts in turn.

¶12 We review de novo a trial court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 562, ¶ 16 (internal quotation omitted). Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial. *Id.* A judgment of acquittal is

---

[3] As noted by the State, the conviction for possession of narcotic drugs was Count 7 rather than Count 5, as reflected in the sentencing minute entry. In addition, Counts 3 and 5 are Class 4 felonies, not Class 2 felonies as designated in the minute entry, *see* A.R.S. §§ 13-3407(A)(1), (B)(1), -3408(A)(1), (B)(1), though the sentences imposed on both counts correspond to the applicable presumptive sentence for a category-three repetitive offender convicted of Class 4 felonies, *see* A.R.S. § 13-703(J). We modify the judgment accordingly. *See* Ariz. R. Crim. P. 31.19(d) (authorizing court to modify a judgment).

[4] Absent material change since the date of relevant events, we cite to the current version of statutes.

appropriate only when "there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a)(1).

### A. Count 7 - Use of Wire or Electronic Communication in Drug-Related Transactions

**¶13**   Pursuant to A.R.S. § 13-3417, "[i]t is unlawful for a person" to use any wire or electronic communication to facilitate a conspiracy to sell or transport illegal drugs. Suazo argues the State failed to present any evidence that the seized cell phone "actually belonged" to him, and further contends that even if he was the intended recipient of the drug-related texts, no evidence demonstrates that he "respond[ed]" to those messages, or otherwise conspired to sell or transport drugs.

**¶14**   The record reflects, however, that the State presented substantial circumstantial evidence that Suazo controlled the cell phone found in the Chrysler. First, detectives found the phone next to the driver's seat console, where Suazo had been seated. Second, although Suazo correctly notes that two text messages contained on the phone were not addressed to him (one was directed to his girlfriend and another to a woman apparently unrelated to the case), he does not dispute that many "of the thousands of text messages" recovered from the phone referred to him by name. Because numerous text messages solicited drugs, or otherwise related to drugs, including a text from Castro stating she would not provide Suazo with drugs (though using street terminology) if he did not contact her immediately, sufficient evidence exists from which a reasonable jury could find that Suazo used the cell phone to facilitate the sale or transportation of illegal drugs.

### B. Count 1 – Conspiracy to Commit Sale or Transportation of Dangerous Drugs

**¶15**   A person conspires to sell or transport dangerous drugs if, with the intent to promote or aid the commission of the offense, the person agrees with one or more persons that one of them, or another person, will engage in conduct that constitutes sale or transportation of dangerous drugs, and one of the parties commits an overt act in furtherance of such an offense. A.R.S. §§ 13-1003(A) (2010), -3407.

**¶16**   In this case, the State presented evidence that Suazo received numerous text messages soliciting drugs and at least one message offering drugs. On the day of his arrest, detectives found two baggies of illegal drugs in the immediate vicinity of where Suazo had stood, turned, and reached into his pockets, and the unusual salmon-colored baggie

containing methamphetamine matched the methamphetamine baggies later seized from Castro's car. Likewise, detectives found a prescription pill bottle in the Chrysler's trunk that matched the prescription pill bottles later seized from Castro's apartment. Although the State failed to present any text messages in which Suazo explicitly agreed to provide or receive drugs, on this record, sufficient circumstantial evidence exists from which a reasonable jury could find that he agreed to sell or transport dangerous drugs, and intended to assist the commission of such an offense when he transported heroin and methamphetamine from Castro's apartment.[5] *See State v. Hall*, 129 Ariz. 589, 595 (1981) (holding an "unlawful agreement can be inferred from the parties' overt conduct"), *overruled on other grounds by State v. Bass*, 198 Ariz. 571, 576, ¶ 12 (2000).

## C. Count 2 – Assisting a Criminal Syndicate

**¶17**        A person assists a criminal syndicate by selling or transferring narcotic or dangerous drugs or conspiring to sell or transfer narcotic or dangerous drugs, with the intent to promote or further the criminal objectives of a criminal syndicate. A.R.S. § 13-2308 (2010). A "criminal syndicate" is any combination of persons or enterprises engaging on a continuing basis in conduct that violates a felony statute. A.R.S. § 13-2301(C)(7).

**¶18**        As explained above, *supra* ¶ 16, the State presented substantial circumstantial evidence that Suazo conspired with Castro to sell and transfer dangerous and narcotic drugs. Viewing these facts in light of the ledgers seized from Castro's apartment that detailed her drug operations, sufficient evidence exists from which a reasonable jury could find that Suazo conspired to sell and transfer dangerous and narcotic drugs

---

[5]        To the extent Suazo contends there was insufficient evidence that he intended to aid the sale or transport of drugs, as evidenced by the jury's lesser-included guilty verdicts on Counts 3 and 5 (convicting him only of simple possession rather than possession for sale) and not guilty verdicts on Counts 4 and 6 (acquitting him of sale of dangerous and narcotic drugs), his claim is not well-founded. It is well-settled that Arizona law permits inconsistent verdicts. *Gusler v. Wilkinson*, 199 Ariz. 391, 396, ¶ 25 (2001). Indeed, rather than demonstrating a lack of evidence, an inconsistent verdict may be the result of error, jury nullification, compromise, or lenity. *State v. Hansen*, 237 Ariz. 61, 68, ¶ 20 (App. 2015). Accordingly, courts do not "speculate about the reason for [an] inconsistency or inquire into the jury's deliberations," and inconsistent verdicts generally are not subject to judicial review. *Id*. at ¶¶ 20-21.

with the intent to further the objectives of Castro's drug organization. Therefore, the trial court did not err when it denied Suazo's motion for judgment of acquittal.

## II.     Alleged Admission of Profile Evidence

**¶19**          Suazo contends the trial court improperly permitted the State to elicit profile evidence as substantive proof of his guilt.  Indeed, citing *State v. Haskie*, 242 Ariz. 582 (2017), *State v. Ketchner*, 236 Ariz. 262 (2014), and *State v. Lee*, 191 Ariz. 542 (1998), Suazo argues the State presented testimony that "created a high risk that the jury would convict" him, not for his own conduct, but for the conduct of others.

**¶20**          "Profile evidence tends to show that a defendant possesses one or more . . . characteristics . . . typically displayed by persons engaged in a particular kind of activity."  *Ketchner*, 236 Ariz. at 264, ¶ 15.  Because profile evidence "implicitly invit[es] the jury to infer criminal conduct based on the described characteristics," it "may not be used as substantive proof of guilt[.]" *Id*. at 264-65, ¶¶ 15, 17.

**¶21**          We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.  *Ketchner*, 236 Ariz. at 264, ¶ 13.  An error of law committed in reaching a discretionary conclusion may constitute an abuse of discretion.  *State v. Wall*, 212 Ariz. 1, 3, ¶ 12 (2006).

**¶22**          Without objection, the prosecutor asked one of the investigating detectives whether he believed Castro was "part of a group that deals drugs."  Citing his "training and experience," as well as the evidence recovered during the investigation, the detective testified that he believed Castro ran a drug operation out of her apartment.  The prosecutor then asked the detective whether he believed Suazo was part of Castro's organization.  Over defense counsel's objection that the question called for a legal conclusion, the detective stated that he believed Suazo was part of Castro's drug organization, explaining he reached that conclusion primarily based on the contents of the seized cell phone and the "unique" salmon-colored cellophane packaging material used to hold the methamphetamine found in both Castro and Suazo's possession.  As a follow-up question, the prosecutor asked the detective to identify Suazo's role within this group.  Defense counsel objected, and the court sustained the objection.

¶23          Contrary to Suazo's contentions, the State did not elicit any "profile evidence" during this exchange.  That is, the detective did not testify generally regarding drug dealers' characteristics and patterns of behavior.  Instead, he testified to the specific evidence discovered during the investigation and explained how that evidence linked Suazo to Castro's organization.  Stated differently, the detective never suggested, implicitly or explicitly, that Suazo shared certain characteristics commonly held by drug dealers.

¶24          Although the prosecutor did not elicit profile evidence, he asked the detective if he reached an "ultimate" conclusion in the case, namely, whether Suazo was a member of Castro's drug organization. Pursuant to Arizona Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if . . . [such testimony] will help the trier of fact to understand the evidence or determine a fact in issue." Ariz. R. Evid. 702(a).  "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."  Ariz. R. Evid. 704(b).

¶25          Assuming without deciding that the admission of the statement was error, we find there was sufficient evidence to support the convictions for conspiracy and assisting a criminal syndicate, as stated *supra* in ¶¶ 15-18.

### III.     Denial of Motion for Mistrial

¶26          Suazo argues the trial court improperly denied his motion for mistrial.  Specifically, he asserts the court should have declared a mistrial once it realized it had issued an erroneous jury instruction.

¶27          We review the denial of a motion for mistrial for an abuse of discretion.  *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).  Because "a declaration of a mistrial is the most dramatic remedy for trial error," it should be granted "only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983).

¶28          During the settling of the final jury instructions, the prosecutor questioned whether the State was required to prove that Suazo possessed a usable amount as an element of the offense for Counts 3 and 5. Acknowledging the law had changed with respect to that issue, the court inquired whether the change occurred before the underlying offenses were

committed.  Without determining the date of the change, however, the court ultimately decided to include the "usable amount" element in the instruction, reasoning, if in error, the error favored Suazo.  Accordingly, the court instructed the jurors that they could not convict Suazo of the lesser-included offense of simple possession (on both Counts 3 and 5) unless they found he "possessed a usable amount[.]"

¶29  During deliberations, the jury submitted a question regarding the "usable amount" element: "What is a 'usable amount' of meth or heroin?  One gram? 14 grams? [F]or one person for one time using it?"  When the trial court asked the prosecutor how he would address the jurors' question, the prosecutor explained that he had researched the issue since the settling of the final jury instructions and had discovered that the law changed in 2008, well before the charged offenses occurred, and a "usable amount" was no longer a requisite element of possession of dangerous or narcotic drugs.  *See State v. Cheramie*, 218 Ariz. 447, 451, ¶¶ 20-22 (2008) (holding a "usable quantity" is not an element of possession of a dangerous drug).  The prosecutor then suggested that the court simply inform the jurors that a usable quantity is not an element of the offense and instruct them to "disregard that language in the jury instructions."  Agreeing that a usable quantity was not a required element, defense counsel argued that submission of the incorrect instruction necessitated a declaration of mistrial.  After hearing from counsel, the court acknowledged the instruction was incorrect, but determined the "mistake" could "easily be cured" by instructing the jurors that the State was not required to prove a "usable amount."

¶30  Here, there is no dispute that the given instructions were erroneous.  Therefore, the remaining question is whether the error was harmless.  *See State v. Moore*, 222 Ariz. 1, 14, ¶ 67 (2009).  "An error is harmless if it appears beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained."  *Id.* (internal quotation marks omitted).

¶31  Because the erroneous inclusion of an additional element to the lesser-included offenses only inured to Suazo's benefit, he sustained no prejudice.  Stated differently, the given instructions required the State to prove all the legally required elements, and an additional element.  Thus, the error could not have contributed to the guilty verdicts because it required the State to meet a greater burden of proof.  Moreover, the court remedied the error by instructing the jurors to disregard those portions of the instructions.  *See State v. Govan*, 154 Ariz. 611, 613 (App. 1987) (holding a trial court did not improperly deny a motion for mistrial predicated on an erroneous jury instruction because the court remedied the error by

providing supplemental instruction to the jurors during their deliberations, before they had reached a verdict). We presume a jury follows a court's instructions, and Suazo has not presented any evidence to overcome that presumption. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). For these reasons, the trial court did not abuse its discretion by denying Suazo's motion for mistrial.

**CONCLUSION**

**¶32** For the foregoing reasons, we affirm Suazo's convictions and affirm his sentences as modified.



AMY M. WOOD • Clerk of the Court
FILED: AA