NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER FELIX, *Appellant*.

No. 1 CA-CR 21-0058
FILED 12-21-2021

Appeal from the Superior Court in Maricopa County
No. CR 2019-134566-001
The Honorable Stephen M. Hopkins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jacob R. Lines
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1 Christopher Felix appeals his conviction and sentences for theft of means of transportation. He contends that fundamental error occurred because the prosecutor mentioned a "reasonable person standard" during his rebuttal closing argument. Felix has not met his burden to show that the prosecutor's comment was "so egregious" as to preclude a fair trial or that, without the comment, a reasonable jury could have reached a different verdict. *See State v. Escalante*, 245 Ariz. 135, 142, 144, ¶¶ 21, 29 (2018). For that reason, we affirm.

### BACKGROUND[1]

¶2 One summer morning, around 3 a.m., the victim drove into his employer's fenced lot in Tempe and parked his pickup truck just behind the box truck he used for work. As he testified at trial, he turned off his pickup, put the keys on the armrest—just as he "always" did, and then moved his drink cooler from his pickup into the back of his work truck. As he was setting the cooler down, he saw someone jump into his pickup and turn on the headlights. The two men "star[ed] at each other for a little bit," at which point the victim realized he did not know the man.

¶3 The victim ran back to his pickup, and now clearly seeing Felix inside, opened the door and asked, "what're you doing?" Apparently startled by the confrontation, Felix "put the [pickup] in reverse, . . . swerved, turned around, and just pushed on the gas." The pickup hit the victim in the arm and then careened backwards in an arc before crashing into an asphalt roller about 25 yards away.

---

[1] We view the record in the light most favorable to sustaining the jury's verdict, resolving all inferences against Felix. *See State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 (2005).

¶4          The victim caught up to the pickup and found Felix trying to "change gears and throw it in drive to take off." The shifter malfunctioned, and because the pickup was now stuck in reverse, the victim was able to open the door and pull the keys out of the ignition. The victim told Felix he was going to call the police, at which point Felix started "fighting with [him] and kicking around," but the victim was able to pin Felix in the pickup until police arrived.

¶5          Officers Conklin and Allen responded. Officer Conklin interviewed the victim, while Officer Allen Mirandized and interviewed Felix. Felix told Officer Allen that he had been drinking and walking all day, that he was lost, and that he had "no intentions" of getting into the pickup when he entered the lot. He said that he took the pickup because he was "tired of walking," that he planned to leave the city, and that he "just didn't want to come back." Felix acknowledged he did not own the pickup and admitted he had no plans about where he would leave it.

¶6          The State charged Felix with theft of means of transportation (auto theft) (Count 1), burglary (Count 2), and driving while under the influence (DUI) (Counts 3, 4, and 5). At trial, the State presented testimony from the victim and the two officers and introduced the officers' body camera footage. The defense presented no witnesses or exhibits. During his closing argument, defense counsel argued Felix lacked the requisite intent because he was confused, because he lacked motor control, and because he had only driven the pickup after he was "startled" by the victim and "freaked out." During his rebuttal closing argument, the prosecutor responded as follows:

> And [defense counsel] keeps talking about freaking out. Well, the defendant voluntarily was intoxicated. So we don't know exactly what his frame of mind was, but he was caught stealing a car. I freak out if my wife catches me grabbing an extra cookie before dinner or before bed. Of course, he freaked out. This all comes down really to common sense.
>
> When you came through security, I know they have got a sign down there that says leave your guns, knives, bombs in your car. It doesn't say leave your common sense, so I'm going to ask you to use your common sense as you are going through all of this.
>
> ***What we're dealing with here is a reasonable person standard.*** We know that the defendant got into [the victim's

pickup]. We know that he put it in reverse, and we know that he drove, and we know that he said he wanted to get out of this city. It all ties together. And just because the defendant got startled doesn't mean it's okay for him to steal someone's [pickup]. He put it in reverse, he drove it until he crashed it. And if he hadn't crashed it, maybe the [pin] wouldn't have fallen out of the gear shifter, and he would have gotten it into drive and he would have got away. But he didn't. He got caught. And I ask you to consider everything and return guilty verdicts on each count. Thank you.

(Emphasis added). Felix did not object to the prosecutor's rebuttal argument.

**¶7** The jury found Felix guilty on the auto theft charge and two of the DUI charges. It found him not guilty of burglary but guilty of the lesser offense of criminal trespass. Felix appeals his conviction and sentences for the auto theft charge.

## DISCUSSION

**¶8** Felix raises a single argument on appeal, contending that the prosecutor misstated the law by referring to "a reasonable person standard" during his rebuttal-closing argument. We review a single, unobjected-to prosecutorial statement for fundamental error.[2] *State v. Murray*, 250 Ariz. 543, 549, ¶ 16 (2021) (citing *Escalante*, 245 Ariz. at 144, ¶ 31). Under this framework, a defendant bears the burden to show, first, that a statement constitutes trial error, second, that the error was fundamental, and third, that the error was prejudicial. *Escalante*, 245 Ariz. at 142, ¶ 21.

### I. Prosecutorial Error

**¶9** Counsel have "wide latitude" in presenting closing arguments. *State v. Comer*, 165 Ariz. 413, 426 (1990). "[C]ounsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate

---

[2] The record discloses no sign the prosecutor acted in bad faith or unethically in making the "reasonable person" comment. We will therefore frame our discussion in terms of prosecutorial error rather than prosecutorial misconduct. *See In re Martinez*, 248 Ariz. 458, 469–70, ¶¶ 46-47 (2020).

conclusions." *State v. Bible*, 175 Ariz. 549, 602 (1993). Among other things, however, closing arguments may not misstate the law. *Murray*, 250 Ariz. at 549, ¶ 18.

**¶10**    In determining whether a prosecutor's closing argument was error, we consider "(1) whether the prosecutor's statements called to the jury's attention matters it should not have considered in reaching its decision and (2) the probability that the jurors were in fact influenced by the remarks." *State v. Newell*, 212 Ariz. 389, 402, ¶ 60 (2006). We examine the statements in context, considering the entire record and the totality of the circumstances. *State v. Goudeau*, 239 Ariz. 421, 466, ¶ 196 (2016).

**¶11**    Felix argues the prosecutor diluted the State's burden to prove his subjective intent by urging the jury to consider what a reasonable person would have intended under the circumstances.[3] The State counters that the prosecutor was merely urging the jury "to use their common sense and to judge the evidence as a reasonable person would."

**¶12**    In context, considering the entire record, there is support for both interpretations. Felix's interpretation is more consistent with the prosecutor's use of the word "standard," his subsequent marshalling of facts from which the jury could infer intent, and his conclusion that "it all ties together." The State's interpretation is more consistent with the prosecutor's preceding argument asking the jury to use common sense. And it is more consistent with the final instructions the trial court gave immediately before closing arguments; one of which directed the jury to "[c]onsider all of the evidence in the light of reason, common sense, and experience."

**¶13**    We need not decide which interpretation the jury members more likely favored, however. As explained below, even assuming the prosecutor's comment was error, Felix has not shown it was sufficiently prejudicial as required under a fundamental error analysis.

---

[3]    Although asking whether a reasonable person would have possessed criminal intent is somewhat illogical, it is at least conceivable that a jury member might have understood the inquiry as what an average criminal would have intended under the circumstances. *See State v. Rhoads*, 13 Wash.App.2d 1103, 1107 (2020), review denied, 476 P.3d 577 (2020) (improper for prosecutor to argue, "would a reasonable person know this," where proof of actual knowledge was required).

## II.    Fundamental Error and Prejudice

¶14        Felix argues the prosecutor's rebuttal argument was fundamental error because it relieved the State of its burden to prove his subjective intent, impacted a key factual dispute, and invited the jury to convict him on an improper theory of guilt. An error is fundamental if it (1) "goes to the 'foundation of a case,'" (2) "takes away an 'essential right,'" or (3) is "so egregious that a defendant could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 141, ¶¶ 18–20. If the defendant proves egregious error under the third prong, he has also established prejudice; otherwise, he must show a reasonable jury "*could have* reached a different verdict." *Id.* at 142, 144, ¶¶ 21, 29 (emphasis in original).

¶15        To prove auto theft, the State had to prove, among other things, that Felix "inten[ded] to permanently deprive the [victim] of the [pickup]." *See* A.R.S. § 13-1814(A)(1). Felix did not testify at trial, as was his right, and during closing, his counsel focused almost entirely on Felix's lack of intent. To the extent the prosecutor's comment suggested to the jury that it could employ an objective "reasonable person" standard, it may have gone to the foundation of his case because it would have "directly impact[ed] a key factual dispute" and "relieve[d] the prosecution of its burden to prove [the auto theft] crime's elements." *See Escalante*, 245 Ariz. at 141, ¶ 18. Assuming without deciding that the prosecutor's comment was fundamental error, however, Felix has not met his burden to show it was egregious or otherwise sufficiently prejudicial.

¶16        To be egregious, prosecutorial error "must so profoundly distort the trial that injustice is obvious without the need to further consider prejudice." *Escalante*, 245 Ariz. at 141, ¶ 20. Here, the prosecutor did not directly or explicitly negate its burden to prove Felix's intent beyond a reasonable doubt. *Cf. Murray*, 250 Ariz. at 551, ¶ 27 (finding prejudice from prosecutor's dilution of reasonable doubt standard "self-evident"). Nor did the prosecutor's comments undermine Felix's fundamental rights to a fair trial. *Id.* (listing comments on defendant's silence as one of "few" egregious errors). Assuming the prosecutor's comment was improper, on this record, its effect was minimal.

¶17        To prove prejudice of the less obvious variety, a defendant must show that, without the error, "a reasonable jury could have plausibly and intelligently returned a different verdict." *Escalante*, 245 Ariz. at 144, ¶ 31. This fact-intensive inquiry requires us to consider "the entire record, including the parties' theories and arguments as well as the trial evidence." *Id.* at 144, ¶¶ 29, 31.

¶18      In this case, the comment Felix challenges was brief, making up three words of a single sentence of a lengthy closing argument. In addition, the trial court properly instructed the jury that "with intent to" means "*a defendant's* object is to cause [a certain] result or to engage in [certain] conduct" and that the auto theft charge required proof that "*the defendant*" acted with the requisite intent. (Emphasis added). And the prosecutor walked the jury through these instructions in his closing argument. We presume the jury followed these instructions. *See Murray*, 250 Ariz. at 553, ¶ 36.

¶19      Furthermore, in both of his closing arguments, the prosecutor focused on Felix's intent, telling the jury to think about "what did he want to achieve" and "what his frame of mind was." Defense counsel likewise focused on Felix's mental state, particularly his confusion and distress. In this context, no reasonable jury would have interpreted the phrase "reasonable person standard" as an invitation to disregard the jury instructions and the subjective theories dominating both sides' closing arguments.

¶20      Felix argues the prosecutor's "reasonable person" comment was sufficiently prejudicial because it was the last argument the jury heard before deliberation and because the evidence of Felix's intent was weak and circumstantial. While a prosecutor's misstatement of the law is "most impactful" during his rebuttal closing argument, there was no significant impact here because the evidence of Felix's intent was more than sufficient.[4] *Id*. at 552, ¶ 32. The jury watched body camera footage in which Felix said that he planned to leave the city, that he "just didn't want to come back," and that he had no plans to return the pickup. Felix tried to drive away after being confronted by the victim and tried to shift the pickup into drive and leave again after he crashed. And, contrary to Felix's argument, "[t]he probative value of [this] evidence is not reduced because it is circumstantial." *State v. Murray*, 184 Ariz. 9, 31 (1995).

¶21      Felix contends he refuted this evidence because 1) he was drunk, 2) he had no plans to keep or sell the pickup, 3) there was inconsistent evidence on whether the pickup was running when he got into it, 4) the shifter malfunctioned, and 5) he crashed within 25 yards of getting into the pickup. He argues the jury could have concluded, absent the

---

[4]      Felix appears to challenge the sufficiency of the evidence only to prove prejudice. To the extent Felix intends a direct challenge, substantial evidence supports the jury's verdict. *See Stroud*, 209 Ariz. at 411–12, ¶ 6.

"reasonable person" comment, that he did not intend to steal the pickup but had merely been "startled and knocked the vehicle into reverse."

¶22    Felix's argument fails for several reasons. First, voluntary intoxication was not a defense for the requisite state of mind, as the court instructed the jury. *See* A.R.S. § 13-503. Second, the issue was not what Felix intended to do with the pickup; it was whether he planned to return it. *See State v. Jackson*, 101 Ariz. 399, 402 (1966) (explaining a wrongful taking of property without apparent intent to return it or explanatory circumstances indicates intent to permanently deprive).

¶23    Third, the record shows the jury did not believe—and no reasonable jury would believe—that Felix accidentally drove the pickup. The victim testified that he took the keys out of the ignition and that the shifter could malfunction if the driver shifted the gears too quickly or "in a crash," none of which supports Felix's accidental-driver theory. Because this theory was Felix's only excuse for driving the pickup, the jury must have believed the victim's version of events. *See State v. Schroeder*, 167 Ariz. 47, 53 (App. 1990) (concluding that guilty verdict implied jury did not believe only defense offered); *see also State v. Clemons*, 110 Ariz. 555, 557 (1974) (finding it "peculiarly within [jury's] province" to disbelieve defendant's story).

¶24    Finally, the length or duration of Felix's trip does not compel the inference that he did not intend to steal the pickup; Felix's inebriation necessarily impaired his ability to drive long distances without crashing. In sum, the evidence Felix relies on was largely immaterial to his intent, especially given his conduct before and after the crash, as well as his plan to take the pickup out of the city.

¶25    Felix also argues the evidence was insufficient because the jury's guilty verdicts on the auto theft and criminal trespass charges were inconsistent with its not guilty verdict on the burglary charge. He contends that, if the jury had believed he intended to steal the pickup, it would have found him guilty of burglary, because the primary difference between the burglary and criminal trespass charges was that burglary required proof of his intent to commit a crime while illegally on the property. *Compare* A.R.S. § 13-1506(A)(1) *with* A.R.S. § 13-1503(A)(1). It is well settled, however, that inconsistent verdicts are permissible in Arizona, partially because juries may reach them for any number of reasons. *Gusler v. Wilkinson*, 199 Ariz. 391, 396, ¶ 25 (2001); *State v. Zakhar*, 105 Ariz. 31, 32 (1969). Because we do not know which reasons motivated the jury here, its verdicts do not establish a deficiency in the evidence.

**¶26** In sum, even if the prosecutor's "reasonable person" comment was fundamental error, Felix has not met his burden to show it was sufficiently prejudicial.

## CONCLUSION

**¶27** For the reasons above, we affirm Felix's conviction and sentences.

