NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

LUIS ALVIN MEDINA, *Petitioner*,

*v.*

STATE OF ARIZONA ex rel. RACHEL H. MITCHELL, Maricopa County
Attorney, *Respondent*.

No. 1 CA-SA 25-0201

FILED 12-26-2025

Petition for Special Action from the Superior Court in Maricopa County
No. CR2020-106499-001
The Honorable Sam J. Myers, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Maricopa County Office of The Legal Advocate, Phoenix
By Grace M. Guisewite, John Gattermeyer
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Jordan A. Smith
*Counsel for Respondent*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Veronika Fabian joined.

---

**M O R S E**, Judge:

¶1        In this special action, Luis Alvin Medina challenges the superior court's denial of his motion to dismiss with prejudice on double jeopardy grounds. We accept jurisdiction but deny relief.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The State charged Medina with first-degree murder and child abuse. After a 15-day trial, which included 159 jury questions, the jury began deliberations.

¶3        On the second day of deliberations, the jury sent a question asking if the jury could find Medina "guilty of child abuse, but not guilty of murder?" The superior court referred the jury to the jury instructions.

¶4        On the third day of deliberations, the jury asked if it could "see the photos of the home that were initially taken (including the pizza box in the trash)?" The superior court explained that the jury had access to all the admitted evidence in the case and then directed the jury towards a specific exhibit.

¶5        Later that day, the jury sent another question in which it asked if it could "be considered child abuse if you witness severe child abuse and don't report it or if a child needs medical attention and no call is made and child deviates and still no call, can that be considered child abuse?" Medina requested the superior court respond to the question with a lesser-included-offenses instruction and a mere-presence instruction. The superior court denied both requests and directed the jury to review its original instructions.

¶6        Still later that same day, the jury sent another question which read as follows: "We are at a standstill Murder: 5 Guilty 7 Not Guilty Child Abuse: 5 Guilty 7 Not Guilty How do we proceed?" The superior court asked the parties how they wanted to proceed. The State requested a mistrial, stating "we don't know if the impasse instruction would be helpful,

2

and we would be asking for a mistrial." The State supported its request by citing *State v. Kuhs*, 223 Ariz. 376 (2010), and suggesting the superior court should consider "if we know the numerical split of the jurors, how long they have been deliberating, and whether or not they have given us any indication about how we could help them." Medina requested the jury be given the impasse instruction. After hearing both sides, the superior court decided to declare a mistrial. The superior court explained:

> I printed out the [impasse] instruction because I really was unsure what you all were going to suggest, and I just wanted to have that available as an option. The thing about this case is there's only really one issue for them to decide, which is did Mr. Medina cause the injury, and they have been deliberating for two and a half days, and their previous instruction -- their previous question suggested that that's really what they are struggling with. And given all the factors that the State indicated, I think the impasse instruction would be futile. So I'm going to deny Defendant's request for the impasse instruction and will declare a mistrial.

¶7        After the mistrial, Medina moved to dismiss on double jeopardy grounds. The superior court denied the motion. Medina seeks special-action review of that denial.

## JURISDICTION

¶8        Special-action jurisdiction is appropriate "if the remedy by appeal is not equally plain, speedy, and adequate." Ariz. R. P. Spec. Act. 2(b). A "special action is an appropriate procedural vehicle" for a double jeopardy claim, "because double jeopardy protects not only against convictions but also against multiple prosecutions." *Fitzgerald v. Superior Court*, 173 Ariz. 539, 543 (App. 1992) (citing *Nalbandian v. Superior Court*, 163 Ariz. 126, 130 (App. 1989)). We accept jurisdiction to consider whether double jeopardy bars the retrial of Medina.

## DISCUSSION

¶9        Both the U.S. and Arizona Constitutions prohibit the repeated prosecution of a criminal defendant for the same offense. U.S. Const. Amends. V, XIV; Ariz. Const. art. 2, § 10. We review de novo whether double jeopardy bars the retrial of a defendant. *State v. Aguirre*, --- Ariz. ---, ---, ¶ 33, 578 P.3d 58, 64 (App. 2025). "Declaring a mistrial after selecting a jury implicates double jeopardy." *Id.* at ---, ¶ 25. After a mistrial, a defendant may only be retried if the defendant consents to the mistrial, or

if the trial court holds manifest necessity existed for the mistrial. *Id.* When a jury is deadlocked, there is manifest necessity for a mistrial. *See Gusler v. Wilkinson*, 199 Ariz. 391, 394, ¶ 18 (2001). The State bears the burden of establishing that manifest necessity required a mistrial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). Still, "[w]e will not disturb the trial court's ruling on manifest necessity absent an abuse of discretion." *State v. Aguilar*, 217 Ariz. 235, 239, ¶ 13 (App. 2007). "When a mistrial is declared because the jury is deadlocked, we should give great deference to the court's decision." *Id.*

¶10 After learning that the jury was at a "standstill" and split seven to five for acquittal on all charges, the superior court considered the jury deadlocked and declared a mistrial. At oral argument before this Court, Medina conceded that a "standstill" is the same as a deadlock and that the superior court found manifest necessity for a mistrial existed in this case.

¶11 Absent an abuse of discretion, we must defer to the superior court's determination that a mistrial was appropriate. *Aguilar*, 217 Ariz. at 238, ¶ 7. The superior court explained that it considered the previous jury instructions and questions and felt the jury simply could not decide the case. The superior court also explicitly considered and rejected the alternative course of providing an impasse instruction to the jury. *See Aguirre*, --- Ariz. at ---, ¶ 53 ("Often there are viable alternatives to declaring a mistrial. When that is so, a trial court should consider them first or risk that double jeopardy will apply."). The superior court explained that the jury's questions indicated it was struggling with whether Medina caused the harm in this case. The superior court made this decision after presiding over a 15-day trial and receiving 159 questions from the jury, providing context from which the superior court could understand the issue with which the jury struggled. The superior court noted that after two-and-a-half days of deliberations and several more questions, the jury still could not decide the issue. Given these facts and the jury's five-to-seven split, the superior court concluded an impasse instruction would be "futile," determined further deliberations with this jury would not resolve the "standstill," and declared a mistrial based on jury deadlock. *See* Ariz. R. Crim. P. 22.5(a)(2) (requiring the superior court to discharge a jury that cannot agree on a verdict).

¶12 Medina argues that the superior court abused its discretion by declaring a mistrial without inquiring to determine if the jury was truly deadlocked. Medina cites to *Gusler* and *State v. Espinoza*, 233 Ariz. 176 (App. 2013), to argue that the trial court may not declare a mistrial based on jury

deadlock without making an inquiry of the jury. We disagree. The U.S. Supreme Court has rejected the imposition of any "mechanical" procedure or "rigid formula" for determining when "jury deadlock warrants a mistrial":

> And we have never required a trial judge, before declaring a mistrial based on jury deadlock, to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse.

*Renico v. Lett*, 559 U.S. 766, 775 (2010) (quoting *Wade v. Hunter*, 336 U.S. 684, 691 (1949)).

**¶13** To the extent that *Gusler* and *Espinoza* provide exceptions to this general rule, such exceptions are limited to the unique circumstances of those cases, i.e., the interactions of lesser-included offenses and the possibility of implied acquittal.

**¶14** In *Gusler*, the jury sent a note to the trial court suggesting it could have decided to acquit the defendant on one count and was deadlocked on lesser-included offenses. 199 Ariz. at 392, ¶¶ 4–5. The note read: "We are deadlocked 7–5—Count 1 Talked about crucial issue for 2 hours—no movement Not guilty on manslaughter Deadlocked on negligent homicide—What do we do?" *Id.* at ¶ 5. Although the note indicated the jury may have found the defendant not guilty of manslaughter, when the trial court questioned the jury about its verdict, the trial court only asked if the jury had reached a verdict on "count one" and failed to inquire whether the jury had acquitted the defendant on manslaughter. *Id.* at 395, ¶¶ 22–23. The supreme court held that retrying the defendant on manslaughter violated double jeopardy because the trial court had not inquired further, and the jury might have intended to acquit the defendant of manslaughter. *Id.* at ¶ 23. However, the supreme court explicitly permitted retrial on negligent homicide, the charge on which the jury note indicated a seven-to-five deadlock. *Id.* at 396, ¶ 26.

**¶15** Unlike in *Gusler*, this jury did not indicate that it may acquit Medina of one charge but not the other. By allowing retrial of the negligent-homicide count, *Gusler* supports the State's position. Here, the jury's note stated it was at a "standstill" and voted seven to five on all charges. There

is no risk that Medina would be tried twice for a charge of which a jury had already decided to acquit him.

**¶16**　　　　In *Espinoza*, the State charged the defendant with aggravated robbery. 233 Ariz. at 178, ¶ 2. The trial court instructed the jury that "if they found her not guilty of aggravated robbery, or if they could not reach a verdict on aggravated robbery, they could consider theft of a means of transportation as a lesser-included offense." *Id.* The jury sent a note to the trial court stating "[w]e may be hung on the first offense, how do we word that and move on to the lesser charge?" *Id.* at ¶ 3. The trial court answered its question, and the jury returned a verdict of guilty for theft of a means of transportation. *Id.* Later, this Court overturned that conviction because theft of a means of transportation is not a lesser-included offense for aggravated robbery. *Id.* at ¶ 4. The State attempted to retry the defendant for aggravated robbery and the defendant moved to dismiss on double-jeopardy grounds. *Id.* at ¶ 5. We held the defendant could not be retried for aggravated robbery, because the State had failed to demonstrate a deadlocked jury, as required for a holding of manifest necessity. *Id.* at 181, ¶¶ 16–17. We explained that a jury is only required to make reasonable efforts at agreement before moving on to consider the lesser-included offense.

**¶17**　　　　The trial court needed to inquire further of the jury in *Espinoza* because it was impossible to know whether the jury had acquitted the defendant of aggravated robbery, genuinely deadlocked on that count, or had only made reasonable efforts at agreement before moving on to the lesser included offense. In contrast, this case does not involve the interaction of lesser-included charges, a reasonable-efforts alternative to genuine deadlock, nor the risk of possible acquittal. Instead, the jury note confirmed the jury was at a "standstill" and divided seven to five on each count. There is no risk the jury acquitted on any count nor skipped consideration of one count in favor of the other, as in *Espinoza*. Absent such risks, the superior court did not abuse its discretion by declining to make further inquiry of the jury after receiving the jury's note.

**¶18**　　　　Nor are we persuaded by Medina's argument that the superior court abused its discretion by failing to give an impasse instruction under Arizona Rule of Criminal Procedure 22.4. Rule 22.4 states that "[i]f the jury advises the court that it has reached an impasse in its deliberations, the court *may*, in the parties' presence, ask the jury to determine whether and how the court and counsel can assist the jury's deliberations." Ariz. R. Crim. P. 22.4 (emphasis added). The use of "may" makes clear that this rule is discretionary. *See Magee v. Olson*, --- Ariz. ---, ---, ¶ 13, 574 P.3d 1189, 1193

(App. 2025). The superior court here determined it would be "futile" to give the Rule 22.4 instruction. *See supra* ¶ 6. Given this determination, the superior court complied with Rule 22.5, which requires the court to dismiss a jury which cannot agree. Ariz. R. Crim. P. 22.5(a)(2). Medina has not established the superior court abused its discretion.

¶**19** Additionally, we disagree with Medina's argument that the prosecutor's statement at trial that "we don't know if the impasse instruction would be helpful" means that the State failed to meet its burden to demonstrate manifest necessity. This statement is not an admission of uncertainty, but rather an explanation of why the impasse instruction would not resolve the deadlock. This statement came immediately after the prosecutor explained that the superior court should find the jury deadlocked based on the length of the jury's deliberations and the numerical split of the jurors. Then, the prosecutor stated that there was no reason to believe the impasse instruction would be helpful. Medina's argument ignores the context of the prosecutor's entire statement which included all the reasons the court should declare a mistrial and dismiss the jury. The prosecutor's statement does not show the State failed to meet its burden.

¶**20** Certainly, inquiry of the jury may be preferable, and even necessary in some cases. *See, e.g.*, *Gusler*, 199 Ariz. at 395, ¶ 23; *Espinoza*, 233 Ariz. at 179, ¶ 10. But we decline to adopt a brightline rule that a judge must do so in every case. *See Renico*, 559 U.S. at 775 (rejecting mechanical rules for determining "whether jury deadlock warrants a mistrial"). An absolute requirement to make an inquiry of the jury after it has indicated deadlock is not always necessary and risks promoting jury coercion. *See State v. Kuhs*, 223 Ariz. 376, 384–85, ¶¶ 42–43 (2010) (discussing what a trial court must consider to avoid jury coercion); *Sicellon v. Commonwealth*, 250 N.E.3d 541, 546–47 (2025) (explaining concerns about coercion support a court's decision not to make inquiry of jurors). And "the Supreme Court has warned trial judges to avoid coercing deadlocked jurors." *Harrison v. Gillespie*, 640 F.3d 888, 902 (9th Cir. 2011) (footnote omitted). The U.S. and Arizona Constitutions do not obligate the superior court to make an inquiry of the jury in every case before declaring a mistrial. Trial courts possess broad discretion to decide whether jury inquiry is warranted on a case-by-case basis. *Cf. Sicellon*, 250 N.E.3d at 547 (agreeing with a trial court's decision that "inquiry was inappropriate in the particular circumstances"). The superior court did not abuse its discretion here by declining to make an inquiry of the jury before declaring a mistrial.

7

**CONCLUSION**

¶21        We accept jurisdiction and deny relief.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR